647 So.2d 337 (1994)
STATE of Louisiana
v.
Gary D. HARRIS.
No. 94-K-0970.
Supreme Court of Louisiana.
December 8, 1994.
Dwight Doskey, New Orleans, for applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., and Valentin M. Solino, Asst. Dist. Atty., for respondent.
PER CURIAM:
The defendant was charged together with Margaret Bryant and Deborah Monroe with possession of "crack" cocaine with the intent to distribute, in violation of La.R.S. 40:967. After the trial court denied a motion to suppress the evidence, Bryant and Monroe entered pleas of guilty as charged and the defendant elected a bench trial. The court found him guilty as charged and sentenced the defendant to ten years at hard labor, suspending the term of imprisonment and placing him on active probation for five years with special conditions. On appeal, the Fourth Circuit affirmed the defendant's conviction and sentence. State v. Harris, 93-0416 (La.App. 4th Cir. 3/29/94); 635 So.2d 389. We granted the defendant's application for review to consider the sufficiency of the evidence supporting his conviction and now reverse.
On the night of January 5, 1989, Deborah Monroe sold crack cocaine from apartment F-135 in an apartment complex located on Curran Boulevard in New Orleans. Monroe conceded as much by her pre-trial plea of guilty and in her testimony at trial. The police had received numerous complaints about drug dealing from the apartment and placed a surveillance team in the parking lot of the complex approximately 7:00 p.m. that night. The police had also sent a confidential informant into the apartment where he purchased a single rock of crack cocaine. The state presented no evidence placing the defendant on the scene at the time of that sale. Shortly after establishing their surveillance, however, the police observed the defendant on the stairwell to the second floor of the "F" building in the complex, approximately thirty to forty feet from Monroe's apartment located at the bottom right rear of the breezeway which divided the "F" building and gave access to the lower two apartments on either side. The defendant's sister lived on the other side of the breezeway from Monroe. The officers had an unobstructed view of her *338 apartment from their vantage point in the parking lot but could not see Monroe's door.
Over the course of the next two hours, the officers observed six to eight vehicles stop at the breezeway in what became a routine sequence of events. The occupants either indicated that they recognized the defendant or the defendant waved "his hand ... as if he was making a motioning gesture towards the car...." After a brief exchange of words, the defendant and one of the occupants of the car walked towards the right rear of the building and out of the view of the officers. A few moments later, they returned to the front of the breezeway, where the defendant repositioned himself on the stairway as his visitor got back in the car and left the scene. The police did not stop the suspect vehicles or record their license plate numbers.
On the strength of their controlled buy and surveillance, the police executed a search warrant for Monroe's apartment at approximately 9:00 p.m. that night, after first apprehending the defendant without incident as he sat on the stairway to the second floor. A search of defendant's clothing revealed an alligator clip in the pocket of his coat, paraphernalia associated with the smoking of marijuana, not cocaine. Outside the door to Monroe's apartment, the police found a matchbox filled with eight rocks of cocaine individually packaged in small plastic ziploc bags. Inside the apartment, where they arrested both Monroe and Bryant, the officers found four more rocks of cocaine, plastic baggies, several weapons and a bent wire with a cotton swab on the end, a device associated with the smoking of crack cocaine.
The defendant testified at trial that he had been locked out of his sister's apartment after playing basketball with the brother of Margaret Bryant, who lived upstairs over the breezeway in the "F" building, and waited for her return on the steps at the front of the breezeway. He left them only once to make a telephone call. The defendant denied any involvement in Monroe's drug trafficking or that he had led a steady stream of visitors back to her apartment. Monroe informed the court that she knew the defendant only vaguely from the visits he paid across the breezeway to his sister. She denied that the defendant had helped her sell drugs on that night or that she had been aware that he may have walked with any of her visitors to the back of the breezeway. In that regard, Monroe claimed that she had had only three visitors to her apartment on that night between 7:00 p.m. and 9:00 p.m, including her cousin, Margaret Bryant, and a pizza delivery man, who she assumed had been the confidential informant.
On the evidence at trial, a rational trier-of-fact could reasonably reject the defendant's denial that he had accompanied anyone to the back of the breezeway on the right hand side and thereby speculate about the extent to which the defendant may have made himself a principal in any sale conducted by Deborah Monroe from her apartment. La.R.S. 14:24; see State v. Rexrode, 536 So.2d 671 (La.App. 3rd Cir.1988); State v. Seay, 521 So.2d 1206 (La.App. 2nd Cir.1988); State v. Cook, 460 So.2d 1075 (La.App. 2nd Cir.1984), writ denied, 466 So.2d 465 (La. 1985). Nevertheless, the state presented evidence of only one sale that night, to the confidential informant, in a transaction which did not implicate the defendant, and which occurred inside the Monroe apartment, where the police found the other four rocks of cocaine and suspected that Monroe had flushed a larger amount down the toilet seconds before they apprehended her sitting on the closed lid. The state could not place the defendant inside that residence at any time during the night, however, or otherwise establish his relationship with Monroe, who admitted that she sold drugs but denied knowing the defendant on anything more than a casual basis. The state also had no evidence linking the defendant to the eight rocks of cocaine found outside the door to Monroe's apartment other than his physical proximity within a forty-foot range. It is settled, however, that "[t]he mere presence of someone in the area where the controlled dangerous substance is found, or mere association with the person found to be in possession of the contraband, is insufficient to constitute constructive possession." State v. Walker, 369 So.2d 1345, 1346 (La.1979). When it cannot place the defendant in actual possession of contraband drugs, the state *339 must establish that he had dominion and control over the contraband, and each case turns on its particular facts. State v. Bell, 566 So.2d 959 (La.1990); State v. Trahan, 425 So.2d 1222 (La.1983).
The due process standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not provide reviewing courts with a mechanism to second guess the rational credibility determinations of the factfinder, State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), but it also does not allow jurors to speculate "`if the evidence is such that reasonable jurors must have a reasonable doubt.'" State v. Mussall, 523 So.2d 1305, 1311 (La.1988) [quoting 2 C. Wright, Federal Practice & Procedure, Criminal 2d § 467 (2d ed. 1982)]; State v. Lubrano, 563 So.2d 847 (La.1990). With concrete evidence of only one sale on that night by Deborah Monroe to the confidential informant, an offense not connected to the defendant in any fashion, mere association of the defendant with Monroe and the immediate vicinity of her apartment, and mere proximity of the defendant to the matchbox found outside the door to Monroe's apartment, a rational factfinder could only speculate that the defendant exercised with Monroe dominion and control over the twelve rocks of cocaine recovered by the police.
Accordingly, the defendant's conviction and sentence are reversed and he is ordered discharged from state custody.
CONVICTION AND SENTENCE REVERSED; DEFENDANT DISCHARGED.
WATSON, J., not on panel. Rule IV, Part 2, § 3.