979 So.2d 672 (2008)
STATE of Louisiana, Appellee
v.
James FRIDAY, Appellant.
No. 43,157-KA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 2008.
Louisiana Appellate Project by James E. Beal, Jonesboro, for Appellant.
*673 Walter E. May, Jr., District Attorney, for Appellee.
Tammy G. Jump, Assistant District Attorney.
Before PEATROSS, DREW & MOORE, JJ.
PEATROSS, J.
Defendant, James Friday, was convicted of second degree battery, a violation of La. R.S. 14:34.1. He now appeals his conviction only. For the reasons set forth herein, the conviction of Defendant is affirmed.

FACTS
James and Kimberly April Friday ("April") were married on October 31, 2003. The couple lived in Castor, Louisiana, and had one child together while April had a daughter from a previous relationship. On June 2, 2005, the couple began arguing over various issues, including money.[1] During the argument, Defendant asked April to leave and April asked Defendant to leave. Eventually, April decided she would leave the home and go to her mother's house which was across the street. As April was preparing to leave, Defendant demanded she return some money April had, some of which Defendant had given to her for a truck payment, some spending money and some of which was child support money April had received from her daughter's father. April advised Defendant that she would give him the money that was intended for the truck note, but not the rest of the money and she then took some money from her wallet and was holding it in her hand when Defendant grabbed her arm and began twisting it. Defendant used both hands to twist April's arm despite her protestations that he was hurting her and that her arm was breaking. As Defendant continued to twist April's arm, they eventually heard a popping sound and Defendant let go of her arm and walked out of the room. Defendant then called April's mother on the telephone and told her that the two had been arguing and that April's arm was broken. April's mother came over to the house and took April to the Natchitoches Parish Hospital where an x-ray revealed that April's arm was broken. According to Dr. James Albright, an expert in the field of orthopedic surgery, April sustained a spiral fracture of the ulna, a very unusual fracture which requires a great amount of twisting force to produce a break and causes tremendous pain.
While April was en route to the hospital, Defendant called a friend of his, Patrick Thrasher, who is also a deputy with the Bienville Parish Sheriff's Office. Defendant told Deputy Thrasher that he and April were arguing about money and he had "messed up." Defendant asked what he should do and was told not to hide and that he would probably be arrested. After the conversation, Deputy Thrasher, who was on duty, waited for a call from the Sheriff's Office regarding the incident. When he was contacted, Deputy Thrasher went to the hospital where he spoke with April.
Deputy Thrasher asked April, "You've been horse-playing?" to which April responded, "No." Initially, Deputy Thrasher appeared to believe the situation was not serious; however, once he learned that April's arm was broken, he took written statements from April and her mother.
As previously stated, Defendant was arrested, charged and convicted of second degree battery. He was sentenced to *674 serve three years in jail,[2] two of which were suspended, with Defendant being placed on two years' probation, subject to numerous special conditions of probation. Defendant now appeals his conviction.

DISCUSSION
Assignment of Error Number One (verbatim): The trial court erred in denying defendant's motion for mistrial after extensive inculpatory statements attributed to the defendant were used at trial without any prior notice to defendant.
Defendant argues that a mistrial was warranted after the State was allowed to introduce the testimony of April wherein she made statements regarding the crime that were attributed to Defendant. He further asserts that the State failed to give notice of its intent to use the statements, further warranting a mistrial.
The State counters that the statements about which Defendant complains were not inculpatory; and, therefore, a mistrial was not warranted. We agree.
On motion of the defendant, a mistrial shall be ordered when prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized by La. C. Cr. P. arts. 770, 771 or 775. State v. Ellis, 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139. La. C. Cr. P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
La. C. Cr. P. art. 771 sets out permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made under grounds that do not require an automatic mistrial under Article 770. Article 775 also sets forth additional permissive grounds for mistrial, which include, that
[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Articles 770 or 771.
The determination of whether actual prejudice has occurred lies within the sound discretion of the trial court, and this decision will not be overturned on appeal *675 absent an abuse of that discretion. State v. Price, 40,408 (La.App. 2d Cir. 12/16/05), 917 So.2d 1201, writ denied, 06-0156 (La.6/16/06), 929 So.2d 1284.
La. C. Cr. P. art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
All statements which may be damaging in nature at trial are not inculpatory. As contemplated by La. C. Cr. P. art. 768, an "inculpatory statement" refers to an out-of-court admission of incriminating facts made by the defendant after the crime has been committed. An incriminating statement is one which admits a fact tending to establish guilt, or from which guilt may be inferred. State v. Seymour, 449 So.2d 1189 (La.App. 2d Cir.1984), writ denied, 452 So.2d 173 (La.1984).
Notice under La. C. Cr. P. art. 768 is not required when the statement sought to be introduced forms a part of the res gestae. State v. Barnes, 414 So.2d 711 (La.1982).
In brief, Defendant specifically points to two portions of trial testimony by April wherein she describes what happened on the night she was injured. During the testimony, April recalls what Defendant said to her during the incident. The defense notes the following statements:
I asked him to leave and he said if he left he was taking everything I told him no, he wasn't. Then he told me to leave and I said fine, let me get the car seat. And I then thought I'd just go across the road to my mother's, and I went to the back of the house to get a pair of shorts and he kept hollering where's my money.
"He just he come (sic) towards me and he said that was his money. That he'd been taking care of Kaitlyn and that her daddy hadn't and I hadn't and he come (sic) close he put his forehead right there by mine and just kept pushing me back cussing me."
Defendant complains that these statements should have been disclosed by the State prior to their use at trial as the statements are inculpatory. Immediately after the statements were made by April during her testimony, Defendant made a contemporaneous objection and the jury was removed from the courtroom. At that time, the defense argued that the State had not provided prior notice of its intent to use the inculpatory statements. Defense counsel stated, "These are inculpatory statements that I've requested and I haven't I haven't heard any of these statements before (sic)." In response, the State indicated that the statements made by April were not inculpatory statements, but were all a part of the res gestae of the offense, and notice was not required prior to the introduction of the particular statements. In further explanation of his position, the defense attorney made the following argument:
Well, Your Honor, the statements that (sic) concerning the money that she's now saying that he's going to take her child support which is actually evidence of another crime. I've never been furnished that statement that he says I've supported this child. He hasn't. So I'm entitled to that money. That's all that's totally news to me and if he's taking somebody else's child support money that's a theft. That's evidence of another crime. That's inadmissible and it's evidence that I haven't been furnished. It's highly inculpatory and I *676 have not been notified of anything about him taking her child support money. This is the first notice I've ever had that there was child support money involved. The first I heard of it was in Ms. Jump's opening statement and that'sthat'sI move for a mistrial."
Defendant's argument is without merit. The statements that the defense alleges are inculpatory are not such within the meaning of La. C. Cr. P. art. 768. The statements April attributed to Defendant were presented as the description of the events that led to the battery she suffered. The statements in and of themselves do not provide any incriminating facts or admission of guilt, nor could guilt be inferred from the statements. The statements were merely illustrative to demonstrate the tenor of the argument between Defendant and April. There was no admission of guilt, nor could guilt of the charged offense, second degree battery, be inferred from the statements made by the witness. Notice under La. C. Cr. P. art. 768 was not required in this instance.
Further, we note that Defendant does not specify in brief, or during his argument to the trial court, under which statutory provision the mistrial should have been granted. The circumstances of this case do not warrant a mandatory mistrial under the provisions of La. C. Cr. P. art. 770. Thus, our review focuses on whether the trial court abused its discretion in failing to declare a mistrial under La. C. Cr. P. arts. 771 and 775. As previously noted, the statements made by April and attributed to Defendant were not inculpatory, nor did admission of the statements by the trial court cause any defect in the proceedings. We find no abuse of discretion on the part of the trial court.
This assignment of error is without merit.
Assignment of Error Number Two (verbatim): The district court erred in denying defendant's motion for new trial after discovery of a prior written inconsistent statement of the victim known to the state was not furnished to defendant for use at trial.
Defendant argues that the trial court erred in denying the motion for new trial based on the fact that the State failed to furnish a prior written statement made by April that was allegedly inconsistent with her trial testimony. Defendant urges that the prior statement could have been used to attack the credibility of her trial testimony, but it was sealed in the record and not disclosed to him.
The State contends that the prior statement made by April was not exculpatory and, thus, not discoverable; and, in the alternative, the State contends that there was no prejudice to Defendant.
The denial of a motion for new trial is not subject to appellate review except for error of law. La. C. Cr. P. art. 858; State v. Horne, 28,327 (La.App.8 2d Cir.8/21/96), 679 So.2d 953, writ denied, 96-2345 (La.2/21/97), 688 So.2d 521. The decision on a motion for new trial rests within the sound discretion of the trial court. State v. Horne, supra. The appellate court will not disturb this ruling on appeal absent a clear showing of abuse. Id. Generally, a motion for new trial will be denied unless injustice has been done, no matter on what allegations it is grounded. State v. Dowden, 41,939 (La.App. 2d Cir.3/28/07), 954 So.2d 300, writ denied, 07-0909 (La.11/9/07), 967 So.2d 501; State v. Horne, supra.
La. C. Cr. P. art. 851 provides:
The motion for new trial is based on the supposition that injustice has been done the defendant and unless such is shown to have been the case the motion *677 shall be denied, no matter upon what allegation it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
In the case sub judice, during the trial and in a prior bond reduction hearing, Deputy Thrasher testified that, when he was at the hospital interviewing April, she told him that Defendant had not intended to break her arm. At trial, April testified that she believed Defendant did intend to hurt her arm and that he refused to let go of the arm even after she told him he was hurting her and that she believed her arm was breaking. April denied making any statement to the deputy regarding Defendant's lack of intent. Likewise, April's mother denied hearing her daughter make any such statements while they were at the hospital emergency room.
From this trial testimony, the defense, without having reviewed April's prior statement, filed the motion for new trial alleging that the prior statement was exculpatory and should have been available for the purposes of impeachment. After the hearing on the motion for new trial began, the trial court recessed that hearing to allow the defense an opportunity to review April's statement and present its argument. After hearing the arguments of the defense and the State, the trial court ruled that there were no major inconsistencies in April's statement and denied the motion for new trial.
We conclude that the trial court did not err in denying Defendant's motion. In reviewing the trial court's actions in context with La. C. Cr. P. art. 851, we find that Defendant failed to show that there was an injustice done in this case or that any of the grounds cited by Defendant necessitated the granting of a new trial. In both the prior statement and her trial testimony, April states that she and Defendant argued; then, when she attempted to leave, the source of contention was money that Defendant wanted from her. When April refused to give Defendant the money she was holding, Defendant twisted her arm until it broke. Both statements bear out these facts.
It appears that the argument of the defense focused primarily on the differences between April's testimony and the testimony of Deputy Thrasher. While April contends that she never reported that Defendant's acts were unintentional, Deputy Thrasher consistently testified to the contrary. Defendant was aware of the inconsistency between the testimony of these two witnesses and did question April as well as Deputy Thrasher regarding these points. April's mother was also questioned regarding this issue. It was within the province of the jury to make the *678 credibility determinations when deciding which version of the events should be believed. The written statement of April does not include any reference as to whether Defendant's acts were intentional; thus, it would not have been helpful on this point of contention.
Defendant also alludes to the fact that April's trial testimony appears to be more embellished than the written statement. This is of no consequence. During the trial, April was asked specifics about the incident and provided an opportunity to respond to those specific questions. While there may be more detail to some points of the story, there are no major differences between the two accounts of the events. It is also noted that April's written statement was taken while she was in the emergency room receiving or having just received treatment for a significant injury. Deputy Thrasher commented in his trial testimony that April was not very talkative, which he attributed to her injury or possibly to her medicated state. It is conceivable that April would not provide extensive details in the statement written on the night of the incident.
In summary, we find nothing in the record or Defendant's argument that would suggest that the trial court abused its discretion in denying the motion for new trial. Absent such abuse of discretion, this court will not disturb the ruling of the trial court.
This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the conviction of Defendant, James Friday, is affirmed. It is further ordered that the minutes be amended to reflect that the sentence imposed was without hard labor and the Clerk's Certificate indicating that the sentence was imposed at hard labor is ordered rescinded. In the event the Clerk's Certificate has been communicated to the Department of Public Safety and Corrections, it is hereby ordered that a notification of correction be issued to the Department. See footnote 2, supra.
AFFIRMED.
NOTES
[1] The record indicates that, on at least one prior occasion, an argument between the two had become violent and resulted in the arrest of Defendant.
[2] Defendant was prosecuted for a relative ("with or without hard labor") felony, meaning that he had exposure for either a hard labor (Dept. Of Public Safety and Corrections) sentence, or a sentence to serve local jail time. Both the minutes and a Clerk's Certificate in the record incorrectly reflect that he received a hard labor sentence. The transcript is controlling, however, and it clearly reflects that the sentence did not involve hard labor.