# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 09-1084

**STATE OF LOUISIANA**

**VERSUS**

**MARCUS GENE HOLLIER**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 71404
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Michael Harson**
**District Attorney, Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

John Clay Lejeune
P. O. Box 1919
Crowley, LA 70527
(337) 788-1505
Counsel for Defendant/Appellant:
Marcus Gene Hollier

Roger P. Hamilton, Jr.
Acadia Parish, Assistant District Attorney
P. O. Box 288
Crowley, LA 70527
(337) 788-8831
Counsel for Plaintiff/Appellee:
State of Louisiana

**EZELL, JUDGE.**

Defendant, Marcus Gene Hollier, was charged with one count of distribution of a controlled dangerous substance, a violation of La.R.S. 40:967. A jury trial was held on October 28, 2008, and on October 29, 2008, Defendant was found guilty as charged. On November 5, 2008, Defendant filed a motion for new trial and motion for post-judgment verdict of acquittal. A hearing was scheduled for November 25, 2008, on Defendant's motions. Both motions were denied. On January 26, 2009, Defendant was sentenced to seventeen years at hard labor without the benefit of parole, probation, or suspension of sentence. Defendant filed a motion to reconsider the sentence on February 10, 2009, which was denied on April 1, 2009.

Defendant has perfected a timely appeal. He raises three assignments of error:

1. The trial court erred in failing to direct a verdict of not guilty, as there was insufficient evidence to support a finding that all of the essential elements of the crime of distribution of methadone were proven beyond a reasonable doubt as the State failed to establish either possession or distribution by the appellant.

2. The trial court erred in failing to grant a motion for recess/motion to continue and motion for new trial in light of the unavailability of Erica Daigle, the confidential informant, whose testimony was essential to the appellant's case and who provided the court with an affidavit showing the possibility of a different result had she been allowed to testify.

3. The trial court erred in failing to grant a mistrial when evidence of other crimes was presented by Detective Dale Thibodeaux to the jury despite a prior agreement between the parties not to introduce said evidence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent involving Defendant's sentence.

1

The penalty provision for distribution of methadone requires the first two years of the sentence to be served without benefit of probation, parole, or suspension of sentence. La.R.S. 40:967(B)(4)(b). In sentencing Defendant to seventeen years at hard labor, the judge stated, "I'm not going to make it without benefit of parole, probation or suspension of sentence."

Thus, the trial court imposed an illegally lenient sentence. *See State v. Thibodeaux*, 05-680 (La.App. 3 Cir. 12/30/05), 918 So.2d 1093. Therefore, we do not recognize an illegally lenient sentence that was not raised as error. Recently, in *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931, this court, after recognizing the trial court's failure to impose a mandatory fine as error patent, stated, "However, this court will not recognize an illegally lenient sentence claim unless it is a raised error."

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant was convicted of distribution of a controlled dangerous substance, a violation of La.R.S. 40:967(A), which provides, in pertinent part, that it is unlawful "for any person knowingly or intentionally: (1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance, or controlled substance analogue classified in Schedule II." In the current case, the controlled dangerous substance was methadone.

Defendant argues that the drug was in the possession of and distributed by another person and that he was simply an observer of the drug transaction. He argues that the State failed to prove that he was the person who possessed and distributed the drug; therefore, the evidence introduced was insufficient to support a conviction for distribution.

> The standard of appellate review for a sufficiency of the evidence claim
> is whether, after viewing the evidence in the light most favorable to the

2

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* [433 U.S. 307, 99 S.Ct. 2781(1979)]. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. *State v. Jones*, 31,613 (La.App. 2d Cir.4/1/99), 733 So.2d 127, *writ denied,* 99-1185 (La.10/01/99), 748 So.2d 434; *State v. Ford,* 28,724 (La.App. 2d Cir.10/30/96), 682 So.2d 847, *writ denied,* 99-0210 (La.5/14/99), 745 So.2d 12.

This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Robertson*, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. *State v. Allen*, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, *writs denied,* 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, *cert. denied,* 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, *writ denied*, 02-3090 (La.11/14/03), 858 So.2d 422.

. . . .

In order to convict a defendant for possession of a CDS with the intent to distribute pursuant to LSA-R.S. 40:967(A), the state must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the CDS and that he did so with the intent to distribute it. *State v. Moore,* 40,311 (La.App. 2d Cir.1/13/06), 920 So.2d 334, *writ denied,* 06-2267 (La.6/1/07), 957 So.2d 167; *State v. Clark,* 35,272 (La.App. 2d Cir.12/5/01), 803 So.2d 280. The defendant need not be in actual possession of the contraband if the state can prove that he had constructive possession of it, which means that he had knowledge of its presence and "dominion and control" over it. *State v. Harris*, 94-0970 (La.12/8/94), 647 So.2d 337; *State v. Bell*, 566 So.2d 959 (La.1990); *State v. Barakat,* [38,419; 38, 420; 38,421 (La.App. 2 Cir. 6/23/04),877 So.2d 223].

The mere presence of a person in the place where contraband is found or the mere association with a person possessing contraband is insufficient to establish constructive possession. *State v. Harris, supra*; *State v. Walker,* 369 So.2d 1345 (La.1979). The determination of whether a defendant is in constructive possession of contraband depends upon "the peculiar facts of each case":

3

> Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs.

*State v. Barakat,* 877 So.2d at 227 (internal citation omitted).

*State v. Brown*, 42,188; 42,189; 42,190, pp. 9-12 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 741-42, *writ denied*, 07-2199 (La. 4/18/08), 978 So.2d 347.

At trial, Jamin Meaux testified that he was an officer with the Morse Police Department. He also worked as an undercover agent with the Acadia Parish Sheriff's Drug Strike Force. He testified that on August 21, 2006, equipped with a monitoring device, a wire, he and a confidential informant, Erica Daigle, went to Defendant's residence. There they made contact with Defendant and "a Ms. Suzanne [Richard], and [they] had talked briefly about purchasing some methadones." Officer Meaux stated that Defendant asked him what he was looking for. Defendant then told Ms. Richard to get the drug. Ms. Richard left the room and returned with a methadone wafer and put it on the table. The officer put thirty dollars down on the table, and Defendant picked up the money and put the bills into his pocket. The officer testified that Defendant then "demanded that we took [sic] the methadone before we left the house." Within a week of the purchase, the officer viewed a photographic line-up and identified Defendant as the one from whom he purchased the drug.

Dale Thibodeaux was the chief narcotics officer with Acadia Parish Sheriff's Office at the time of the purchase. He arranged for the controlled buy. He testified that he was listening to the transaction via the wire while parked in his vehicle outside the residence. He testified that he listened to the C.I. and Officer Meaux speak with a male and a female. He heard the male "pressure agent Meaux into

4

taking the pills." He stated that the male said: "Nobody leaves this house with drugs, because if you get stopped down the road, they're not going to come back and, you know, I'm already hot right now. They're watching me." On cross-examination, the officer testified that the conversation between the undercover officer and the male and female was not preserved in any form.

The above stated facts are insufficient to establish that Defendant had actual possession of the drug; therefore, the State was required to prove that Defendant had constructive possession of the drug. As noted above, to have constructive possession, the drug must have been subject to Defendant's dominion and control. Factors to be considered to determine whether Defendant exercised sufficient dominion and control over the drug to constitute constructive possession are his knowledge that the drug was in the area, his relationship with the person who appeared to be in actual possession, access to the area where the drug was found, evidence of recent drug use, and physical proximity to the drug. *Brown,* 966 So.2d 727.

Testimony established that it was Ms. Richard who retrieved the drug and gave it to the undercover officer. There was no testimony or other evidence given that established conclusively that Defendant resided at the house where the drug was obtained. However, at trial, when asked if he had ever been to the residence before, Office Meaux testified that he had never been there before. He stated, "I didn't know who lived in that house. I know they were in there. I knew that they lived in there." At one point, Officer Thibodeaux indicated that he was aware of the fact that the father of the confidential informant lived in the house and that the confidential informant was a friend of Ms. Richard's. This was the extent of any indication of who lived in the residence.

5

In *State v. Anderson,* 36,969 (La.App. 2 Cir. 4/9/03), 842 So.2d 1222, the defendant was convicted of possession of a controlled dangerous substance with intent to distribute and illegal possession of a firearm. He asserted there was insufficient evidence that he resided where the drugs were located. Defense witnesses testified that he did not reside at the location. The second circuit found that regardless that defense witnesses testified as to the defendant's nonresident status, "[t]he search of the residence revealed that only one bedroom contained clothes and indicated that only one person resided there. The clothes included Anderson's work clothing exhibiting his name." *Id.* at 1229. *See also State v. Jones*, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, wherein a stack of mail showed that the defendant lived at the same location wherein the drugs were found. In the current case, nothing was produced and submitted which conclusively proved Defendant lived in the residence from where the drug was located and distributed.

There was no testimony or other evidence offered that Defendant had any kind of relationship with Ms. Richard, who was the one who retrieved the drug from an unknown location and put it on the kitchen table. However, the Defendant told Ms. Richard to get the drugs. While Defendant argues that it was Ms. Richard who gave the drug to the officer, that he was only an observer, the second circuit in *Anderson* also noted that a defendant can share constructive possession with a companion. In the current case, Officer Meaux testified that after Defendant asked him what he wanted, Defendant then told Ms. Richard to get the drug, and that he pocketed the money the officer put on the table. Further, Defendant exhibited guilty knowledge when he ordered the officer and the confidential informant to ingest the drug before they left the house, because "they" were watching him.

6

Even without evidence that Defendant lived in the house, or had any kind of relationship with Ms. Richard, the testimony indicated that Defendant exercised dominion and control over the drug by first asking what the officer wanted, telling Ms. Richard to retrieve the drug from an unknown location, picking up the money, then ordering the officer and the confidential informant to ingest the drug for his own safety. With Officer Meaux's uncontroverted testimony, the evidence was sufficient to show that Defendant had constructive possession of the drug, which he intentionally distributed to others for a price. Specific intent to distribute an illegal drug may be inferred from the circumstances of the case. There was no contestation that the drug was not distributed as defined by La.R.S. 40:961(14). *See also, Brown,* 966 So.2d 727. "[I]n the absence of internal contradictions or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the factfinder, is sufficient to support a conviction." *State v. Johnson*, 01-1084, p.3 (La.App. 3 Cir. 2/6/02), 817 So.2d 120, 123.

Defendant, in brief, argues that Officer Meaux's testimony was so contradictory and irreconcilable that it could not be credible such that would support a finding of distribution, particularly since the police report regarding the controlled buy was prepared by Officer Thibodeaux, "who could only hear the transaction, rather than the undercover officer actually conducting the transaction," and there were major errors in the report. Most of the contradictory testimony and the error in the report involved the partial methadone wafer that was preserved in an evidence bag and introduced at trial. Officer Meaux testified first that the confidential informant picked up the wafer and broke it in half, then on cross examination, he testified that he picked up the wafer and broke it in half. In the police report, it was written that Officer Meaux put his half of the wafer in his mouth, then spit it out later. The wafer

7

in the evidence bag was reportedly the wafer he spit out. But then the officer testified that he did not put the wafer into his mouth, only pretended to, and put it into his pocket. Initially, Officer Meaux testified that the one-half wafer in the bag was the confidential informant's portion that he ordered her to spit out into a plastic bag when they left the residence, then he testified that he put his portion into the plastic bag. It was noted at trial that there was only one "piece" of methadone wafer in the evidence bag.

The disposition of the methadone wafer did not affect the officer's testimony that it was Defendant who constructively possessed and distributed the drug. As for the essential elements discussed above pertaining to possessing and distributing the drug, the officer's testimony did not vary significantly from the initial police report. Moreover, the jury was made aware of the inconsistencies concerning who broke the wafer in half and who put the wafer in their mouth, and the fact that there was only one piece of the wafer delivered to the crime laboratory. "It is the role of the factfinder to weigh the respective credibility of the witness, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review." *Id.; See also State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

Accordingly, considering the above uncontroverted testimony and jurisprudence, the testimony of Officer Meaux was sufficient to establish that Defendant exercised control and dominion over the drug and exhibited the requisite intent to distribute the drug beyond a reasonable doubt. Accordingly, there is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant asserts the trial court erred when it denied his oral motion, made after the State rested its case, to continue the trial based on the fact that a vital defense witness did not show for trial and could not be immediately located. Further, Defendant asserts the trial court erred when it denied his motion for a new trial based on its failure to continue the trial to allow him to locate the missing witness whose testimony would surely have changed the result of the trial. The witness was Erica Daigle, the confidential informant who was present at the time of the distribution of the drug.

Following jury selection, and prior to opening statements, defense counsel indicated to the trial court that Erica Daigle had not shown up for trial and could not be located. Later, defense counsel informed the trial court that someone who was sent to Ms. Daigle's home reported that she was in a hospital but did not know which hospital. Again, later in the day, Thomas Frease, a lieutenant with the Acadia Parish Sheriff's Office, testified that he had attempted to locate the witness at various hospitals around Lafayette, but was unsuccessful.

After the State rested its case, defense counsel again put Lieutenant Frease on the stand to testify what steps he had taken to serve the witness with a subpoena. He stated that he served one subpoena at her house prior to trial and her stepfather had stated she was at the doctor's and would give her the subpoena when she returned. Defense counsel told the trial court that his whole case was contingent upon the testimony of Erica Daigle and asked the trial court for "a reasonable continuance" to have additional time to locate her. The State argued that defense counsel had known for two months that the trial was to be held on this date and that he had ample time in which to subpoena the witness. Defense counsel pointed out that trial was

9

originally scheduled for the prior August, and that the witness had appeared then, but at the last moment, the State had asked for a continuance and, over Defendant's objections, trial was rescheduled to the current date. The trial court then ruled:

> Well, we already started the trial, that's the thing. And I know you expected her to show up. I mean, that was my understanding that you expected, from conversations with her, that she would show up, but we're still stuck here without her here. So, I just think it's too late to ask for a continuance. When we started the trial, everybody certified that we were ready to go with the trial, and there was no witness issues at the time. So, I'm going to deny the continuance.

Louisiana Code of Criminal Procedure Article 707 provides that a motion for continuance must be in writing and filed seven days prior to the commencement of trial. Louisiana Code of Criminal Procedure Article 708 states that while a motion to continue trial will not be granted after trial has commenced, a recess, or a temporary adjournment may be allowed. However, although the motion was improperly titled, jurisprudence holds that the motion may be considered by the trial court. *See State v. Dooley*, 38,763; 38,764 (La.App. 2 Cir. 9/22/04), 882 So.2d 731, *writ denied,* 04-2645 (La. 2/18/05), 896 So.2d 30; *State v. Plaisance*, 00-1858 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, *writ denied*, 02-1395 (La. 11/27/02), 831 So.2d 270, cert. denied, 538 U.S. 1038, 123 S.Ct. 2084 (2003).

> Despite the differing definitions of a continuance and a recess, a motion for a recess is governed by the same standards as a motion for a continuance. *State v. Rodriguez,* 02-334, p. 14 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 117, *writ denied,* 03-0482 (La.5/30/03), 845 So.2d 1061, *cert. denied,* 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 321 (2003). In general, whether to grant or deny a recess rests within the sound discretion of the trial judge, and a reviewing court will not disturb the ruling absent a clear abuse of discretion. *State v. Hampton,* 1998-0331, p. 9 (La.4/23/99), 750 So.2d 867, 877.

> A motion for a continuance based on the absence of a witness must meet specific criteria. La.C.Cr.P. art. 709 provides the motion must state:

> > (1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the

10

necessity for the presence of the witness at the trial;

(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred;  and

(3) Facts showing due diligence used in an effort to procure attendance of the witness.

The trial court has great discretion in granting a recess;  denial of a motion for a recess is not grounds for reversal, absent an abuse of that discretion and the showing of specific prejudice.  *State v. Stevenson*, 02-0079, p. 3 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 345.  To show prejudicial error sufficient to warrant reversal, the defendant must show that the testimony the witness would have given would have been favorable to the defense and would indicate the possibility of a different result. *Id.*

*State v. Riggins,* 08-714, pp.8-9 (La.App. 5 Cir. 4/7/09), 13 So.3d 187, 192 *writ denied*, 09-1045 (La. 1/22/10), 25 So.3d 129.

In *Riggins*, an alibi witness failed to appear for trial, and the defendant requested a recess, which was denied by the trial court.  Although the fifth circuit found that due diligence was used to obtain the presence of the witness, it also found that the defendant failed to state the facts to which the witness was expected to testify, or to state the circumstances showing a probability that the witness would show up at the time to which the trial was deferred.  Moreover, the fifth circuit stated that "[t]he mere suggestion that [the witness] may have provided the defendant with an alibi is insufficient to satisfy the requirement of that facts be offered to prove her presence at trial necessary to the defendant's case." *Id.*

In the current case, the record indicates that defense counsel subpoenaed the witness for the first scheduled trial in August 2008, and then again after the trial was continued at the State's request to October 2008.  As noted, defense counsel indicated that he had spoken with the witness the day prior to trial, but when she did not appear on the day of trial, he informed the trial court and sent Lieutenant Frease out to locate

11

her.  However, defense counsel only advised the trial court that his "whole case was contingent upon the witness's testimony," and did not elaborate as to what the substance of the testimony was and how the failure to obtain the testimony was prejudicial to Defendant's case. While defense counsel seemingly exercised due diligence to secure the witness's presence and demonstrated that there was a probability that the witness would show up for trial at the time to which the trial was deferred, defense counsel failed to provide the trial court with the remaining criteria–the substance of her testimony and the prejudice that could have been suffered by Defendant.  Accordingly, this court finds the trial court did not err when it denied Defendant's motion to continue trial.

However, on November 25, 2008, a hearing was held on Defendant's Motion for New Trial, wherein he asserted that "the court['s] failure to grant a continuance in order to find the witness, Erica Daigle, was a prejudicial error."  The trial court denied the motion without comment.

In pertinent part, La.Code Crim.P. art. 851, provides:

> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> The court, on motion of the defendant, shall grant a new trial whenever:
>
> . . . .
>
> (2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.
>
> The denial of a motion for new trial is not subject to appellate review except for error of law. La. C. Cr. P. art. 858; *State v. Horne,* 28,327 (La.App.2d Cir.8/21/96), 679 So.2d 953, *writ denied,* 96-2345 (La.2/21/97), 688 So.2d 521. The decision on a motion for new trial rests within the sound discretion of the trial court. *State v. Horne, supra.* The appellate court will not disturb this ruling on appeal absent a clear showing of abuse. *Id.* Generally, a motion for new trial will be denied unless injustice has been done, no matter on what allegations it

12

is grounded. *State v. Dowden*, 41,939 (La.App. 2d Cir.3/28/07), 954 So.2d 300, *writ denied,* 07-909 (La.11/9/07), 967 So.2d 501; *State v. Horne, supra.*

*State v. Friday*, 43,157, pp. 7-8 (La.App. 2 Cir. 3/26/08), 979 So.2d 672, 676, *writ denied*, 08-860 (La. 11/14/08), 996 So.2d 1088.

Defendant argues that the confidential informant's testimony controverted the only other eye-witness's testimony and that had she testified there was a substantial likelihood that the jury would have returned a not guilty verdict. The State's case was premised on the testimony of the undercover officer that Defendant asked the officer what he wanted, told Ms. Richard to get the drug, pocketed the money which purchased the drug, and finally told the officer to take the drug prior to leaving the residence. The affidavit of Erica Daigle stated that she dealt with Ms. Richard exclusively and that Ms. Richard picked up the money. The only part of Ms. Daigle's testimony that coincided with that of Officer Meaux's was that Defendant said, "[W]hy don't you eat it [the methadone] now."

We note that La.Code Crim.P. art. 858 states that "[n]either the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law." Defendant appends his grounds for a new trial on La.Code Crim.P. art. 851(2), which provides that a new trial shall be granted whenever "[t]he court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error."

However, the trial court's ruling, denying the motion to continue trial so that Defendant could locate a vital witness, was a correct ruling considering that defense counsel failed to provide the trial court with the necessary criteria on which to grant the motion. Moreover, after the trial court denied the motion to continue trial, defense counsel did not object to the ruling. Accordingly, this court finds that there was no error of law when the trial court denied Defendant's motion for new trial

13

based on the its failure to grant his motion to continue the trial.

## ASSIGNMENT OF ERROR NUMBER THREE

Defendant argues that the trial court erred when it denied his oral motion for a mistrial made after the testimony of one of the State's witnesses described inadmissible "other crimes" evidence. Louisiana Code of Evidence Article 404(B)(1), in pertinent part, provides that "[e]xcept as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The witness was Dale Thibodeaux, the chief narcotics officer. Following the alleged inadmissible comment, defense counsel asked the trial court to declare a mistrial.

> Under La.Code Crim.P. art. 770, a mistrial is mandatory upon timely motion of the defendant when a remark or comment made within the jury's hearing by "the judge, district attorney, or a court official" is a direct or indirect reference to "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." A police officer is not a court official, therefore, the mandatory mistrial mandated by Article 770(2) is not applicable. *State v. Watson*, 449 So.2d 1321 (La.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); *State v. Henry*, 461 So.2d 484 (La.App. 3 Cir.), *writ denied*, 464 So.2d 313 (La.1984). However, a discretionary mistrial is appropriate under La.Code Crim.P. art. 771, where the witness is a police officer and the inadmissible other crimes evidence is elicited or should have been anticipated by the prosecutor. *State v. Waymire*, 504 So.2d 953 (La.App. 1 Cir.1987).

> . . . .Under La.Code Evid. art. 401, " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." According to La.Code Evid. art. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." Finally, under La.Code Evid. Art. 403, relevant evidence may be excluded by the trial court "if its probative value is substantially outweighed by the danger of unfair prejudice."

*State v. Bailey*, 95-78, pp. 13-14 (La.App. 3 Cir. 11/2/95), 664 So.2d 665, 674, *writ denied,* 96-609 (La. 6/21/96), 675 So.2d 1077. Moreover, on appeal, an improper reference to other crimes evidence is subject to the harmless error rule, i.e., whether

the verdict actually rendered in the case was surely unattributable to the error. *State v. Nelson,* 02-65, p. 11 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 804, *writ denied,* 02-2090 (La. 2/21/03), 837 So.2d 627.

During the State's direct examination, the officer described what he could hear of the conversation taking place inside the residence after the undercover officer and the confidential informant had made contact with Defendant and Ms. Richard. He testified:

> Then, I heard the male subject was trying to pressure agent Meaux into taking the pills. He said, "Nobody leaves this house with drugs, because if you get stopped down the road, they're not going to come back and, you know, I'm already hot right now. They're watching me." This and that, okay? So, he tried to pressure him into taking the drugs, okay?
>
> Q. When you talk about being hot, what are you talking about?
>
> A. We were investigating Marcus. I went face-to-face with Marcus several times. I told Marcus that he was dealing drugs, I'm tired of it, and I was going to put him away.

Defense counsel immediately objected. At a sidebar conference, defense counsel asked for a mistrial based on Officer Thibodeaux's reference to other crimes evidence. As noted above in Defendant's assignment of error, he states that there was an agreement there would be no testimony regarding other crimes evidence. While we found nothing in the record to indicate there was such an agreement, when defense counsel asked for a mistrial, he stated: "We indicated there was no other crimes evidence. The State indicated there was no other crimes evidence." Without commenting on defense counsel's vague assertion there was an agreement not to raise other crimes evidence, the State argued that it did not think the jury viewed the comment as other crimes evidence and that the statement only indicated that Defendant was being investigated. The trial court denied the motion and admonished the jury to disregard the remark.

In *State v. Clark*, 05-652, p. 12 (La.App. 5 Cir. 2/14/06), 924 So.2d 282, 289,

15

*writ denied,* 06-622 (La. 10/13/06), 939 So.2d 372, *and writ denied*, 06-1175 (La. 1/12/07), 948 So.2d 138, while discussing whether the prosecutor used the officer to elicit inadmissible other crimes evidence, the fifth circuit noted:

> A police officer is not a "court official" for purposes of La.C.Cr.P. art. 770. *State v. Walker*, 03-1072, p. 4 (La.App. 5th Cir.12/30/03), 865 So.2d 172, 174, citing *State v. Hayes,* 414 So.2d 717, 721 (La.1982); *State v. Celestine,* 98-1166, p. 7 (La.App. 5th Cir.3/30/99), 735 So.2d 109, 114, *writ denied,* 99-1217 (La.10/8/99), 750 So.2d 178. However, an impermissible reference to another crime which was deliberately elicited by the prosecutor is imputable to the State, and triggers the provisions of La.C.Cr.P. art. 770. *State v. Walker*, 03-1072 at p. 7, 865 So.2d at 174.

In *Clark*, the court found that the prosecutor was not trying to elicit other crimes evidence from an officer when it asked the officer "why he did not execute a search warrant on the [d]efendant's home or car. The Detective stated that: '[t]he information that we received from a confidential source stated he was not living at the address listed on his rap sheet.'" *Id.* at 288 (alteration in original). Clark argued that the reference to his rap sheet was other crimes evidence. The fifth circuit went on to state:

> In *Edwards* the Court held:
>
> > [A] comment must not "arguably" point to a prior crime; to trigger mandatory mistrial pursuant to Article 770(2), the remark must "unmistakably" point to evidence of another crime. *State v. Babin,* 336 So.2d 780 (La.1976) (where reference to a "mug shot" was not unmistakable reference to a crime committed by Defendant); *State v. Harris*, 258 La. 720, 247 So.2d 847 (1971) (where no crime was evidenced by a police officer's reference to obtaining Defendant's photograph from the Bureau of Investigation). In addition, the imputation must "unambiguously" point to the Defendant. *State v. Edwards*, 406 So.2d 1331, 1349 (La.1981), cert. denied sub nom. *Edwards v. La.*, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). The Defendant has the burden of proving that a mistrial is warranted.
>
> [*State v.*] *Edwards*, 97-1797 at p. 20, [(La. 7/29/99)], 750 So.2d at [893] 906. See also: [*State v.*] *Williams,* 01-1007 [(La. App. 5 Cir. 2/26/02)]

at p. 8, 811 So.2d [1026] at 1030-1031.

In *Edwards*, the Louisiana Supreme Court found that a detective's response to the prosecution's question that he found out that a certain location was the defendant's residence "[t]hrough the probation officer" did not warrant a mistrial. The Court found that the context of the State's line of questioning did not reveal an intent to elicit inadmissible evidence, and furthermore, the response did not unambiguously point to another crime committed by the defendant. Since the elements of La.C.Cr.P. art. 770(2) had not been satisfied, the defense failed to prove entitlement to a mandatory mistrial. In addition, the Court found that the defendant was not entitled to a mistrial under La.C.Cr.P. art. 771. The Court noted that the defendant failed to ask for an admonishment to the jury. The Court concluded that the trial judge did not abuse his discretion in denying the mistrial.

In *Walker*, a police officer made repeated indirect references to his familiarity with the defendant and observation of him on other occasions. We found that the comments did not constitute a reference to other crimes within the meaning of La.C.Cr.P. art. 770(2), because there was no evidence that the prosecutor was attempting to elicit information about other crimes. Rather, the questioning was aimed at setting up the sequence of events leading to the defendant's arrest. Further, we noted that there was no specific mention of a prior crime or bad act.

In *Celestine*, a police officer testified regarding the defendant's identification and stated in response to questioning at trial that when he got the defendant's name he ran it through the national crime computer and got a past criminal history. Thereafter, the defense moved for a mistrial. This Court affirmed the trial court's refusal to grant the defendant a mistrial and held that the officer did not refer to any specific crime committed by the defendant. This Court noted that, although the defense moved for a mistrial, no admonition was requested and, therefore, the trial judge was not obligated to admonish the jury.

*Id.* at 289-90(alterations in original)(footnote omitted).

In *Bailey,* 664 So.2d 665, this court found that the trial court correctly determined that the prejudice of a comment made by a police officer during direct examination did not substantially outweigh its probative value. The defendant had called for help after shooting the victim and explained to the officer that he was probably going to be blamed for the shooting since he had been arrested before. The defendant argued that the statement was inadmissible reference to other bad acts and accordingly deprived him of a fair trial because it prejudiced the jury against him.

17

This court concluded that the statement was relevant in that it tended to prove that the defendant, who was charged with second degree murder, had a guilty mind and pertained to whether he possessed specific intent to commit the offense. This court stated:

> Under Rule 403, the trial court is vested with great discretion in determining whether the probative value of a relevant piece of evidence is substantially outweighed by the danger of unfair prejudice. *Nigreville v. Federated Rural Elec. Ins., Co.*, 93-1202 (La.App. 3 Cir. 7/13/94), 642 So.2d 216, *writ denied*, 94-2803 (La. 1/27/95), 649 So.2d 384. No details were introduced concerning the nature of the defendant's arrests and the State did not pursue the matter any further.

*Id.* at 675.

In *State v. Spencer,* 96-248, p. 8 (La.App. 3 Cir. 11/6/96), 683 So.2d 1326, 1331, *writ denied*, 96-2938 (La. 5/9/97), 693 So.2d 773 (alteration in original), the defendant, who was convicted of a drug offense, complained that the officer's statement made during trial that he saw the defendant standing on the side of the road and knew him because "[w]e've dealt with him in the past on occasions out on the street," was not a prohibited other crimes evidence. This court noted that the comment was made merely to show how the officer happened to have recognized the defendant.

Similarly, in the current case, Officer Thibodeaux's testimony as to the statement made by Defendant about not taking the drug out of the house because he was "already hot right now. They're watching me," could be construed as pertaining to his guilty state of mind and thereby relevant and admissible.

*Id.* at 67-68.

Furthermore, in a case with a very similar factual situation as the current case, the fifth circuit found that the even though the comments may have been inadmissible, the error in its admission was harmless. *State v. Black*, 03-911 (La.App. 5 Cir. 12/30/03), 864 So.2d 836. In *Black*, the undercover officer and confidential

18

informant went to the defendant's house to purchase oxycodone. Once in the residence, the confidential informant left the undercover officer alone, and the officer dealt exclusively with the defendant. The officer told the defendant he wanted twenty pills, but the defendant said that he had only ten pills available. As they were negotiating for the drugs, the officer could see another man sitting in a bedroom smoking crack cocaine. The defendant said he was going to go get a hit of crack cocaine and that his roommate would deal with him and went into the bedroom and closed the door. The roommate came out of the bedroom and told the officer they had only ten pills left, having just exchanged most of the pills for the crack cocaine they were smoking. The roommate gave the officer the pills and took the money. The two men were eventually charged with distribution.

In *Black*, the defendant asserted on appeal that the state failed to prove he was a part of the distribution between the undercover officer and the roommate and that the state failed to prove he was a principal to the drug transaction. This assignment was found to be without merit. The defendant then asserted that the trial court incorrectly allowed inadmissible other crimes evidence to be admitted when the undercover officer testified as to the defendant's smoking crack cocaine in the house and when, in response to the state's repeated questions about the defendant's prior cocaine use, his mother repeatedly testified that she knew he had a problem with crack cocaine in the past. The defendant moved for a mistrial, which the trial court denied. The fifth circuit stated:

> An exception to Article 770's rule requiring a mistrial is made if the evidence is substantially relevant to some purpose other than to show that the defendant is a bad person and, therefore, more likely to have committed the crime. The trial judge must balance the pertinent factors to determine whether the probative value of the evidence is outweighed by its prejudicial effect. *State v. Kirkpatrick,* 443 So.2d 546, 556 (La.1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984).

19

In the present case, the complained of evidence is attributable to the state, since the prosecutor twice elicited the same response from the witness. However, we find that the references to defendant's past crack cocaine use were independently relevant to negate defendant's theory that he was an innocent bystander. Moreover, even if the evidence of defendant's past drug use should not have been introduced, we find any error in its admission to be harmless. *State v. Quest,* 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 785, *writ denied,* 00-3137 (La.11/2/01), 800 So.2d 866; *State v. Johnson,* 94-1379 (La.11/27/95), 664 So.2d 94. Considering that there was evidence of defendant's present cocaine use and considering the evidence against the defendant, we find that the guilty verdict was surely unattributable to any error in the brief references to defendant's past crack cocaine use.

*Id.* at 841.

Likewise, the reference to Defendant dealing drugs prior to the current incident was independently relevant to negate his assertion that he was only an observer of the drug transaction between Ms. Richard and the undercover officer, or, if the comment of Defendant's drug dealings should not have been introduced, that the error was harmless considering the evidence against Defendant. Therefore, the guilty verdict was surely unattributable to the comment.

## CONCLUSION

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**