STATE OF LOUISIANA,
v.
REGINALD DEWAYNE DIXON.
No. 09-1409.
Court of Appeals of Louisiana, Third Circuit.
May 5, 2010.
JAMES C. DOWNS, District Attorney-Ninth JDC, 701 Murray Street, Alexandria, LA 71301, (318) 473-6650, Counsel for Plaintiff/Appellee: State of Louisiana.
MARK OWEN FOSTER, Louisiana Appellate Project, P. O. Box 2057, Natchitoches, LA 71457, (318) 572-5693, Counsel for Defendant/Appellant: Reginald Dewayne Dixon.
Court composed of JOHN D. SAUNDERS, BILLY HOWARD EZELL, and DAVID E. CHATELAIN[*], Judges.

NOT DESIGNATED FOR PUBLICATION
JOHN D. SAUNDERS, Judge.
On May 10, 2007, a jury found Defendant, Reginald Dewayne Dixon, guilty as charged of one count of armed robbery, in violation of La.R.S. 14:64. The district court sentenced Defendant on May 18, 2007; it ordered Defendant to serve thirty years at hard labor without benefit of probation, parole, or suspension of sentence.
The district court conducted a habitual offender hearing in Defendant's case on August 17, 2007. At the conclusion of the hearing, the court found Defendant to be a habitual offender, vacated the previously imposed sentence, and ordered Defendant to serve forty-nine years and six months at hard labor.
Defendant now appeals his conviction. We affirm.

STATEMENT OF FACTS:
At Defendant's trial, the prosecution introduced both exhibits and testimony. Jackie Rubar was the first witness to testify; she explained that she was on her way to the airport when she was robbed. Ms. Rubar was a Department of Defense contractor, and she had been deployed to Iraq, which was why she was traveling to the Alexandria airport on August 30, 2006. Ms. Rubar chose to wait for her flight at the Alexandria shopping mall. When she exited the mall, Ms. Rubar walked to her vehicle, opened the door, and began packing her purchases in her luggage. While she was there, two women approached her, with one of the women wearing blue scrubs.
Ms. Rubar stated that she had just put the key in her vehicle's ignition when one of the women said something that she did not understand, so she lowered her window. The woman then asked Ms. Rubar if she knew where to find the bed and breakfast, and Ms. Rubar explained she was not familiar with the area. At this point, Ms. Rubar noticed the second woman had a gun, and the second woman demanded Ms. Rubar's purse. Ms. Rubar recalled noting that the gun was real, but wondered whether it was loaded. Ms. Rubar handed the women her purse. It contained all of Ms. Rubar's identification as well as other things including the following: a social security card, driver's license, checkbook, Department of Defense card, passport, airline tickets, bank cards, and less than $200.00 in cash.
One of the women told Ms. Rubar that she had not given her everything. Ms. Rubar panicked and screamed at them that it was all she had. The woman in the blue scrubs opened Ms. Rubar's purse and said something like they had it or it was there. The two women then ran in front of Ms. Rubar's truck toward a green GMC Jimmy. Ms. Rubar decided to run after them and try to get the license plate number. As the women sped off, she saw that the vehicle did not have a license plate, so Ms. Rubar began screaming that she had been robbed.
Ms. Rubar described the perpetrators as young and attractive black women. She said that the second woman, the one with the gun, had been wearing a red bandana on her head and a tank top. The first woman, who had been wearing scrubs, "was a very pretty lady." Ms. Rubar identified a photograph for the prosecution marked as State's Exhibit 1. The first was a picture of her truck, a white Ford F150 with an extended cab, parked next to a minivan, which had been large enough to block the general public's view of the robbery.
Ms. Rubar explained the picture marked State's Exhibit 2 showed where Ms. Rubar ran for help after the robbery. State's Exhibit 3 was another photograph of Ms. Rubar's truck. Ms. Rubar said State's Exhibit 4 depicted a vehicle that looked like the one her assailants used to escape and that the automobile in the picture was substantially similar to the one used in the robbery. Ms. Rubar had initially thought the vehicle was a dark green Blazer. Ms. Rubar explained the women had gotten into the back of the vehicle, and she did not get a clear view of the driver, but it appeared that the driver was a big man. There was also a large person sitting in the front passenger-side seat, but Ms. Rubar could not see that person either. Ms. Rubar stated that she could see four people in the vehicle.
Ms. Rubar testified that, when she was accosted, her purse was sitting next to her on the truck's console. Ms. Rubar would not have given them her purse if they had not robbed her. Ms. Rubar explained that she considered the cash in her purse to have been inconsequential; instead, the theft of her identification had been the most significant loss. Ms. Rubar had to return home, as she could not continue her trip without her identification. On cross-examination, Ms. Rubar explained that her purse, her passport, her airline tickets, and her cards had all been returned to her several days later.
Melissa Walker was the second witness to testify for the prosecution. Ms. Walker was at the Alexandria mall on August 30, 2006, when a lady was robbed. At the time of the robbery, Ms. Walker was waiting behind a green Jimmy four-door sports utility vehicle to access a handicapped parking space. She did not realize there was a robbery until it had already happened. She saw the women walk from a truck and get into the Jimmy. She stated that a black woman wearing a red bandana and a white tank top was the last to get into the Jimmy. As soon as the Jimmy pulled away, the Victim came from her truck crying and saying she had been robbed. At that point, Ms. Walker called 911.
Ms. Walker stated that two of the people in the Jimmy were female, but she did not know the gender of the other person in the vehicle. Ms. Walker said there were three people who climbed into the Jimmy; two of them entered the rear passenger seat through the driver's side, and the third walked around the front of the vehicle and climbed into the front passenger seat, while the driver was already in the vehicle. Once everyone was in the vehicle, they sped away.
Ms. Walker said that she waited with the Victim for the police to arrive. One of the officers asked her to accompany him to identify a vehicle they thought may have been the one used in the robbery. The officer took her to a gas station across from the zoo, and Ms. Walker identified the vehicle as depicting the one used in the crime. Ms. Walker identified State's Exhibit 1 as the Victim's truck and explained it would have been blocked in during the robbery. State's Exhibit 2 depicted the Rite Aid entrance to the mall, which was the closest entrance to where the Victim had parked. State's Exhibit 4 showed the vehicle that had been parked in front of Ms. Walker's vehicle. It was the same vehicle that sped away after three people entered it immediately after the robbery. She last saw the vehicle depicted by State's Exhibit 4 at the convenience store. State's Exhibits 5 and 6 were photographs of the convenience store where the Jimmy had been found.
Ms. Walker stated that the convenience store was less than a mile away from the mall. She left with the police to identify the car approximately ten minutes after the robbery. Ms. Walker did not get a good look at the driver, but she could tell that the driver was a black male.
On cross-examination, Ms. Walker clarified that there had been four people total in the green Jimmy. The driver never exited the vehicle. Ms. Walker could not recall anything unusual about the vehicle, and she agreed that all green Jimmys look alike unless there is a special marking or something unusual.
On redirect examination, Ms. Walker stated that she had been certain the vehicle at the convenience store had been the one driven away from the robbery. On recross-examination, Ms. Walker stated that she was still certain.
Imad Isa, who worked at and owned the Super Zak's convenience store in Alexandria, was the third witness to testify for the State. On August 30, 2006, Mr. Isa was working, and he spoke with the police about a green car left in front of his gas pumps. State's Exhibit 6 depicted his store's name. Mr. Isa stated that, when he is working, he watches the gas pumps all the time; when someone parks at the gas pump, he has to know who it is.
Mr. Isa said he recognized Defendant as the driver of the green Jimmy that had been parked by his gas pumps on August 30, 2006, because Defendant was a regular customer who frequented Mr. Isa's store. Mr. Isa recalled that Defendant parked the automobile in front of pump two, exited the vehicle, and walked into the store. Defendant went straight to the drink cooler for soda or juice and then to the counter to pay. Two women entered the store at about the same time, but Mr. Isa did not see them get out of Defendant's vehicle. As soon as Defendant left, a lot of police arrived. When the police asked who had driven the automobile, Mr. Isa identified Defendant as the driver. Mr. Isa did not see Defendant or the women once the police arrived, but he was able to identify Defendant in a photographic lineup presented to him by the police. On cross-examination, Mr. Isa confirmed that the convenience store was no more than a mile away from the mall.
Patrol Sergeant Danny Joffrion was the fourth witness to testify for the State. Sergeant Joffrion participated in the investigation of the August 30, 2006, armed robbery at the Alexandria mall. When he received a dispatch about the incident, he was given a description of the getaway vehicle, which had been described as a blue or green sports utility vehicle. Sergeant Joffrion observed a vehicle matching the description parked at the Super Zak's convenience store. Sergeant Joffrion pulled his cruiser into the parking lot, parked behind the vehicle, and called in that he had possibly located the automobile involved in the robbery. The vehicle had a temporary plate, but the officer could not really see it through the back window. Sergeant Joffrion did not see anyone near the automobile. Sergeant Joffrion observed that one of the left-side doors was open.
Sergeant Joffrion stated that he kept the automobile under observation and asked several people if they knew who had been in the vehicle; the people told him they did not know. When other units arrived, Sergeant Joffrion entered the store and asked the person working there if he had seen who had exited the vehicle; the worker denied seeing anyone get out of the automobile. Later on, Sergeant Joffrion learned that one of the store clerks had identified the driver. While Sergeant Joffrion was present, a witness from the robbery arrived; he did not personally hear her identify the vehicle as the one used in the robbery.
Officer Chris Fonville, a motorcycle officer with the Alexandria Police Department, testified as the next State's witness. He assisted in the armed robbery investigation by driving in the direction of the mall and looking for the suspect vehicle, a green GMC Jimmy. When Officer Fonville heard that Sergeant Joffrion had located the automobile, he reported to the location. Officer Fonville searched the area for suspects on foot.
Officer Fonville said that he also went to the mall and saw the Victim. He described her as shaken up and upset. The Victim described the vehicle used in the robbery; her description was consistent both with the description broadcast by the dispatcher and with the vehicle located by Sergeant Joffrion. Officer Fonville took statements from two witnesses.
Corporal Klein Johnson, an investigator with the criminal investigations crime scene division of the Alexandria Police Department, testified after Officer Fonville. Corporal Johnson processed the vehicle recovered during the armed robbery investigation; he took pictures and transported it to a secure location. State's Exhibit 8 showed that he found the rear, driver's side passenger door to be open upon his initial examination. State's Exhibit 9 showed that the vehicle had been towed and locked in a secure location. State's Exhibit 10 depicted the interior of the automobile. State's Exhibit 11 showed there was a red bandana in one of the vehicle's storage compartments.
Sergeant Bruce Fairbanks, a detective with the Alexandria Police Department, also testified for the prosecution. Sergeant Fairbanks investigated the August 2006 armed robbery at the Alexandria mall. His investigation resulted in Defendant's arrest. After learning the details of the offense, Sergeant Fairbanks also found out that an automobile matching that used in the offense had been abandoned, with the doors open and the engine running, at a convenience store a half-mile away from the mall. Sergeant Fairbanks went to the convenience store to make sure the vehicle was secure. Once he determined that it was, he went back to the mall.
Sergeant Fairbanks recalled that the Victim was upset and had been crying. She had not only been robbed at gunpoint, but she also had been supposed to board a plane for Iraq within two hours. The Victim no longer had a passport or work permit. Sergeant Fairbanks stated that the original description of the suspect vehicle was that it was a green, four-door GMC Jimmy. The vehicle recovered at the convenience store matched that described. Sergeant Fairbanks took statements from the Victim and the witnesses.
Sergeant Fairbanks explained that he told the other officers that Francesca Stanley, the suspect vehicle's owner, had called the station and asked why the police were "messing with her vehicle." After speaking with Ms. Stanley, Defendant, who was Ms. Stanley's boyfriend, became a suspect in the case. Sergeant Fairbanks constructed a photograph array that contained Defendant's picture. This is accomplished through AFIS by printing booking photographs of both the suspect and five other arrestees matching the suspect's general description. State's Exhibit 7 is the photographic lineup that Sergeant Fairbanks prepared in the instant case.
Sergeant Fairbanks stated that there had been two clerks working at the convenience store, and he spoke to both of them in the course of his investigation. One of the clerks, Mr. Isa, remembered who had been driving the green Jimmy. Sergeant Fairbanks showed Mr. Isa the sheet containing all six pictures, asked him to determine if the suspect's picture was among the photographs, and instructed him to point out the suspect's image if it was on the sheet. Mr. Isa selected Defendant's picture.
Sergeant Fairbanks said law enforcement had yet to identify the women involved in the robbery, but they were still looking. Someone turned the Victim's purse in to the police department, and they returned the purse to its owner.

ASSIGNMENT OF ERROR NUMBER ONE:
Defendant argues, "The state failed to establish all of the elements of proof that Reginald Dewayne Dixon was guilty of armed robbery." Defendant contends the State failed to meet its burden of proving he was involved in the robbery because he was not one of the two people involved in the actual commission of the offense and because neither the Victim nor the eyewitness could identify him as the driver of the getaway car. Instead, the State relied upon Defendant being found in possession of a green GMC Jimmy found at a convenience store over half a mile away from the robbery.
Defendant asserts there is an additional problem with this evidence: the State failed to establish a time line, which means the prosecution failed to exclude every reasonable hypothesis of innocence. Defendant explains the State did not prove when the vehicle was parked at the convenience store; thus, it could have been there prior to or during the robbery. Additionally, Defendant argues that the prosecution failed to establish that the green GMC involved in the robbery had time to arrive at the convenience store after the robbery.
Defendant also claims the prosecution failed to show he was involved in the robbery, even if it showed he exited the green Jimmy at the convenience store, because Defendant was alone in the vehicle when it arrived at the store.
The State maintains that it proved Defendant was a principal in the armed robbery. The State urges that the Victim identified the driver of the getaway car in more detail than what Defendant suggests, and that the driver of the vehicle acted in a manner consistent with a getaway driver. The State continues that an eyewitness to the robbery was able to identify the abandoned vehicle with 100 percent certainty within ten minutes of the robbery and was able to give a general description of the driver.
Moreover, the State argues that the owner of the convenience store positively identified Defendant as the driver of the abandoned vehicle because he had seen Defendant, who was a regular customer at the store, park and exit the automobile, which was owned by Defendant's girlfriend. Defendant left the vehicle with the doors open and the engine running. The store owner also testified Defendant disappeared when law enforcement appeared. The vehicle at the convenience store, which was located one-half mile away from the robbery, had no license plate; instead, it had a temporary tag obscured by window tinting. Officers recovered a red bandana from the vehicle, and Defendant matched the general description of the driver given by both the Victim and the eyewitness.
The State contends, therefore, it introduced sufficient evidence to support Defendant's conviction for being the getaway driver, a principal, to the armed robbery.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the Jackson standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.
State v. Macon, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).
"Circumstantial evidence consists of proof of collateral facts and circumstances from which elemental factors may be inferred according to reason, experience and common sense." State v. Burns, 441 So.2d 843, 845 (La.App. 3 Cir. 1983).
The statutory rule in evaluating the sufficiency of circumstantial evidence is, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. The Louisiana Supreme Court has explained the "hypothesis of innocence" stating:
Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.
State v. Johnson, 09-231, p. 6 (La.App. 3 Cir. 11/4/09), 21 So.3d 1159, 1164 (quoting State v. Chism, 436 So.2d 464, 469 (La.1983)).
Armed robbery is the taking of anything of value that belongs to another from the person or control of another by use of force or intimidation when the perpetrator is armed with a dangerous weapon. La.R.S. 14:64. There is no question that an armed robbery occurred in the instant case; instead, the issue is whether the State proved Defendant was a participant therein.
The evidence presented at trial shows that the Victim was robbed at gunpoint by two women who then escaped in a green GMC Jimmy. The car had a total of four occupants. It was driven by a large male, and there was another person in the front passenger seat. The Victim attempted to obtain a license plate number, but the vehicle did not have a visible license plate. The Victim called the police, the dispatcher notified officers of the offense and sent out a "be on the lookout" bulletin for the green Jimmy. A short while later, one of the officers on patrol discovered a green Jimmy in the parking lot of a convenience store approximately one-half mile away from the robbery site. The vehicle did not have a license plate in the standard location. Instead, it had its tag displayed in the rear window where the tinting of the window obscured the view of the license plate. The vehicle's engine was running, and one of the rear doors was open, but the occupants were no longer in the area.
One of the clerks at the convenience store reported that Defendant had exited the vehicle and had been in the store at the same time as two women, but they all disappeared as soon as the police arrived. The green Jimmy belonged to Defendant's girlfriend, and an eyewitness positively identified the automobile as the one involved in the robbery. The State presented no evidence concerning the likely number of green GMC Jimmy vehicles with missing or obscured tags in the area at the time.
All persons concerned in the commission of a crime, including those who aid and abet in its commission, are principals to the offense. La.R.S. 14:24. "[E]vidence of flight, concealment, and attempt to avoid apprehension is indicative of consciousness of guilt and may be considered by a jury to infer guilt." State v. Jacobs, 08-1068, p. 4 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, 319, writ denied, 09-755 (La. 12/18/09), 23 So.3d 931.
In State v. Perry, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, this court found sufficient circumstantial evidence to sustain the defendant's conviction. The victims could not identify the people who robbed them, but they were able to give a general description of the perpetrators; one was shorter and stockier than the other, and the other was taller and thinner than his companion. The codefendants in Perry, when viewed together, matched the general description given by the victims. Both of the codefendants admitted to plotting to rob the store the following evening, but they alleged someone else had robbed it before they could. Both of the codefendants were found in the immediate vicinity of the store within a couple of hours after the robbery, and Perry had pink stains on his clothing, which was consistent with spatter from one of the victims dropping a drink during the robbery. One of the robbers had also called one of the victims by name, and Perry's codefendant had worked at the store six to seven months before the robbery. Additionally, shoe impressions from the robbery site had similar characteristics to those worn by the codefendants. However, no gun or money was produced at trial. Based on this evidence, this court found sufficient evidence to uphold the defendant's conviction.
In the current case, the jury had to consider the likelihood of another green GMC Jimmy with no visible tag being found shortly after the robbery in the immediate vicinity of the robbery, determine whether Defendant was a large man, decide whether Defendant's flight from the officers and abandonment of the vehicle indicated a guilty conscience, evaluate whether the rear door of the Jimmy being left open and the presence of two women in the store simultaneously with Defendant placed the two women involved in the robbery in the green Jimmy with Defendant at the time he arrived at the store, and make a conclusion about Defendant's innocence or guilt given the likelihood of all these factors existing simultaneously.
Thus, this court finds that a rational trier of fact could have found the likelihood of all of the factors coexisting eliminated all other reasonable hypotheses of innocence. As such, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER TWO:
Defendant asserts, "The trial court erred in denying Mr. Dixon's pre-trial motion to exclude the state's photographic evidence because of its failure to timely to [sic] produce it to him." Defendant claims he did not receive the photographs until just a few minutes before trial; though there was open file discovery in his case, the images had not been contained in the file the State gave to the defense. Defendant argues that the State should not have been allowed to affect his defense by delaying discovery.
Defendant contends that the trial court should not have denied his motion after the State argued that the photographs were innocuous and to be used only for background purposes because the images were actually the keystone of the State's case. Defendant asserts that the State used the photograph of the automobile to have the eyewitness identify it as the one found at the convenience store and to have the Victim identify it as the vehicle used in the robbery. Defendant maintains that his case was prejudiced by the use of the photographs and that, without the images, the prosecution virtually had no case against him.
Defendant urges that the State's reason for not providing copies of the photographs to the defense prior to trial was that the images had not been developed. Defendant asserts this was a deliberate choice made by the prosecution. Moreover, the State delayed an additional day after the film had been developed to surprise the defense minutes before trial. Defendant claims that the prosecution's waiting until the jury was selected to present the photographs to the defense limited the opportunities to defend against the images because a mistrial or a continuance would have been a drastic remedy with a jury waiting. Defendant suggests that, with more time, the defense could have incorporated photographs of other green GMC Jimmy automobiles into its case, obtained statistical data about the number of similar vehicles registered in the State of Louisiana, or prepared arguments that the evidence prejudiced the defense.
The State points out that Defendant's only argument concerning the photographs was that the State failed to provide the defense with copies of them in a timely manner. The defense does not assert that the images were otherwise inadmissible. The State agreed to provide the defense with "all exhibits and evidence for inspection . . . upon reasonable notice and request." The photographs were referenced in the reports that the State provided the defense, and the defense never requested to see the photographs before trial. Moreover, once the photographs were developed, copies were provided to the State and the defense at "virtually" the same time. The witnesses testified that the images were consistent with their observations and testimony, and the district court held that the photographic evidence did not require the defense to take extra time or employ an expert. The State maintains the photographs served only to corroborate the evidence introduced through the testimony of live witnesses; thus, there was no error.
On January 12, 2007, the parties signed the following joint stipulation:
Defendant herein, through counsel, reserving the right to file timely additional motions provided by law, together with counsel for the State of Louisiana, stipulate that the undersigned Assistant District Attorney has provided a copy of the entire file in this matter to the defendant. The defendant stipulates that receipt of this file serves as notice of the State's intention to introduce all evidence (including defendant's statements) included therein. The production of this file constitutes full satisfaction of the Motion for Discovery and Inspection, Motion for Bill of Particulars, Motion for Preliminary Exam and any request for Public Records pursuant to La. R.S. 44:1, et seq. The defendant and the State further stipulate that receipt of this file obligates the defense to timely disclose to the State all materials discoverable by the State pursuant to La.C.Cr.P. arts. 724-728, including, but not limited to, notice of defense based on mental condition and notice of alibi. The State agrees to produce all exhibits and evidence for inspection to the defendant upon reasonable notice and request.
At trial, the defense objected to the use of both a photographic line-up and other photographs the prosecution had provided to the defense "five minutes" before trial. The State responded to Defendant's objection as follows:
And as we explained to him, uh, back in the conference room, Judge, the photos are referenced in the police report. I just got them this morning. Uh, they are innocuous. They are pictures of the crime scene, but they have nothing . . . undue [sic] prejudicial about them, they just help paint a picture for the jury where this crime occurred. Uh, matter of fact, I think they were developed last night or this morning. They did not exist prior to today.
The defense replied that it did not believe any of the photographs were innocuous and that it should have received copies sooner. Based on these arguments by counsel, the trial court overruled Defendant's objection.
Louisiana Code Criminal Procedure article 729.3 requires a party who discovers or decides to use additional evidence following a compliance order to notify both the opposing party and the court of the existence of the additional evidence. This is to allow the opposing party an opportunity to move for discovery or inspection thereof. There has been no violation of this order since, according to the State, the defense had notice of the photographs through open file discovery. Having had notice of the photographs' existence through open file discovery, the defense could have requested discovery and inspection thereof prior to trial, but it did not.
Additionally, the State provided the defense copies of the photographs shortly after the prosecutor obtained possession of the developed images. Although Defendant alleged in his appellate brief that the State had the photographs the day prior to trial, the record shows the prosecutor did not have possession of the developed images until the morning of trial. Thus, the State complied with discovery requisites.
Additionally, any error by the prosecution in failing to provide the defense with photographs at an earlier date was harmless because the defense was not prejudiced by the photographs. "The state's failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to the defendant." State v. Selvage, 93-1435, p. 6 (La.App. 1 Cir. 10/7/94), 644 So.2d 745, 750, writ denied, 94-2744 (La. 3/10/95), 650 So.2d 1174.
Insofar as Defendant claims that having the photographs would have prompted him to obtain photographs of similar automobiles and statistical data concerning the number of green GMC Jimmy vehicles in the State or the area at the time of the offense, open file discovery would have given the defense notice of the make and model of the vehicle used in the robbery and recovered from the convenience store. Both the pictures of similar vehicles and the statistical data would have been relevant even if the State had introduced no photographs, so there was no sudden need for such rebuttal evidence caused by the provision of the photographs to the defense or the introduction of the images into evidence; ergo, there was no prejudice. Defendant's claim that the photographs added to the scope of defense is without merit.
Defendant also contends that the case was based almost solely on the photographs; however, as pointed out by the State, the photographs were introduced to support witness testimony. The Victim clearly described the vehicle during her testimony, and she stated at trial that the picture of the vehicle recovered from the convenience store showed an automobile like the one that had been involved in her robbery. Although the eyewitness, at trial, identified the vehicle in the photograph as the one that had been involved in the robbery, she had already positively identified the vehicle as that used to facilitate the robbery. On the date of the offense, the police had driven the eyewitness to the convenience store, and, at that time, she informed law enforcement that it was the automobile involved in the crime. Thus, Defendant's contention that the prosecution would not have been able to prove its case without the pictures is without merit.
Accordingly, this assignment of error is without merit.

DECREE:
Defendant's conviction is affirmed.
AFFIRMED.
NOTES
[*] Honoable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.