PAINTER, Judge.
11 Defendant, Moses Maine Jacobs, appeals his conviction for possession of cocaine, greater than twenty-eight grams and less than two hundred grams, a violation of La.R.S. 40:967(F)(1)(a). For the following reasons, we affirm.
FACTS
On the evening of March 20, 2007, four Alexandria Police officers were patrolling an area known for drug activity in response to complaints made by the residents. The officers saw Defendant standing next to a ear. As they approached, Defendant ran away. Two officers chased and caught him about two blocks from the vehicle. The remaining two officers looked into the vehicle and saw a razor blade, sandwich bags, and a cutting board with what was later determined to be crack cocaine on it on the center of the driver’s seat.
On July 25, 2007, Defendant was charged by bill of information with possession of cocaine, greater than twenty-eight grams and less than two hundred grams, a violation of La.R.S. 40:967(F)(1)(a). A jury found Defendant guilty as charged on February 14, 2008. On March 3, 2008, Defendant was sentenced to serve thirty years at hard labor, five years of that time to be served without benefit of probation, parole or suspension of sentence. Defendant timely filed a pro se Motion to Reconsider Sentence on March 24, 2008, which was summarily denied on March 31, 2008. Defendant is now before this court on appeal, asserting through counsel that the evidence is not sufficient to support his conviction and that the trial court erred in granting the State’s reverse Batson challenge. Defendant also filed a pro se brief, | .¿claiming ineffective assistance of counsel, that he did not receive a fair trial, and that a jury charge was unfair.
DISCUSSION

Errors Patent

All appeals are reviewed for errors patent on the face of the record as set out in La.Code Crim.P. art. 920. After reviewing the record, we find one error patent. However, it requires no action on the part of this court.
The trial court failed to impose a mandatory fine. Louisiana Revised Statutes 40:967(F)(1)(a) provides that:
Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
The trial court’s failure to impose a mandatory fine renders Defendant’s sentence illegally lenient. However, this court will not recognize an illegally lenient sentence claim unless it is raised as error.

Sufficiency of the Evidence.

Defendant argues that the jury’s verdict fails to meet the legal standard for sufficiency of the evidence. The analysis *318 for a claim of insufficient evidence is well-settled:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
State v. Kennerson, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.
To support a conviction for possession of cocaine, the State had to prove that Defendant was in possession of cocaine and that he knowingly possessed it. La.R.S. 40:967. The amount of cocaine is not in dispute.
Although Defendant had no cocaine on his person at the time he was apprehended, the testimony and evidence at trial indicate that he had constructive possession of the cocaine seized in this case. The supreme court in State v. Toups, 01-1875, pp. 3-4 (La.10/15/02), 833 So.2d 910, 913, summarized the law on constructive possession as follows:
A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it.... Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug....
State v. Trahan, 425 So.2d 1222 (La.1983) (citing State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971)). However, it is well settled that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337; State v. Bell, 566 So.2d 959 (La.1990).
LA determination of whether there is “possession” sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. State v. Hughes, 587 So.2d 31, 43 (La.App. 2 Cir.1991), writ denied, 590 So.2d 1197 (La.1992); see also Bujol v. Cain, 713 F.2d 112 (5 Cir.1983), cert. denied, 464 U.S. 1049, 104 S.Ct. 726, 79 L.Ed.2d 187 (1984) (listing above factors as well as a sixth factor: “evidence that the area was frequented by drug users”).
*319 The State established that Defendant was in an area frequented by drug users. Corporals Todd Beamon, Clifton Fairbanks, and Chris Cooper with the Alexandria Police Department testified that on March 20, 2007, they were patrolling an area in an unmarked unit to investigate complaints from residents that drugs were being sold. According to Corporals Beam-on and Fairbank, the area was well known for drug activity.
The evidence at trial showed that Defendant had guilty knowledge. The supreme court in State v. Davies, 350 So.2d 586 (La.1977), established that evidence of flight, concealment, and attempt to avoid apprehension is indicative of consciousness of guilt and may be considered by a jury to infer guilt. See also State v. Richards, 06-1553 (La.App. 3 Cir. 5/2/07), 956 So.2d 160, writ denied, 07-1129 (La.12/14/07), 970 So.2d 529. Corporals Beamon and Fairbanks both testified that as they approached Defendant to get a look at him, he ran from the officers until he was physically restrained and handcuffed by Corporal Fairbanks. Based on their experience as officers and the fact that they were in a high crime area, Corporals Beamon and Fairbanks stated that Defendant’s actions indicated to them that he was involved in criminal activity.
IsThe testimony and evidence also established that Defendant had access to the area where the drugs were found and that he was in close proximity to the drugs. Corporals Beamon and Fairbanks testified that when they first arrived and before Defendant ran, they saw him standing next to a vehicle while no one else was nearby. More specifically, Corporal Fairbanks stated that as they approached him, Defendant was walking from the passenger side door toward the front of the vehicle. Corporal Cooper, who stayed behind with the vehicle along with Corporal Kitchen, testified that he did not see anyone else around the vehicle and that the keys were in the lock of the closed passenger side door. Corporal Cooper learned soon thereafter that the vehicle was registered to Defendant.
Corporal Cooper testified that when he walked up to the vehicle, he could see a cutting board on the center of the driver’s seat and what he believed to be crack cocaine on the cutting board, in addition to a razor blade and sandwich bags. Based on his experience and training, Corporal Cooper stated that a cutting board and razor blade are used to cut a patty or cookie of crack cocaine into pieces that are packaged in sandwich bags to be sold. Corporal Cooper’s suspicion with regard to these items was corroborated by the discovery of crack cocaine residue on the cutting board and razor blade seized from Defendant’s vehicle. Further, Corporal Fairbanks estimated that Defendant had between $1,000 to $1,200 on his person when he was apprehended.
In State v. Champagne, 02-1218 (La.6/5/02), 819 So.2d 294, the trial court granted the plaintiffs motion to suppress evidence of cash found on the defendant at the time of his arrest, specifically $2,054.00, and scales and baggies found during a search of his residence. The supreme court reversed, concluding that the evidence [ (¡formed an integral part of the charged offense, possession of 28 grams or more but less than 200 grams of cocaine. The court reasoned that the evidence was independently relevant to establish the defendant’s dominion and control over the cocaine retrieved by the police from the defendant’s residence following his arrest and to prove that he knowingly possessed the cocaine.
Likewise, the cutting board, razor blade, and baggies found in Defendant’s vehicle, and the large sum of cash found on his person, are relevant in establishing that *320 Defendant had dominion and control over the cocaine seized from his vehicle and no evidence was submitted at trial to suggest that the drugs belonged to anyone other than Defendant. Further, Defendant did not dispute ownership of the vehicle. A rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that Defendant was in constructive possession of cocaine and that he knowingly or intentionally possessed it. Accordingly, this assignment of error is without merit.

Jury Challenges

By this assignment of error, Defendant argues that the trial court erred in granting the State’s reverse Batson challenge and re-seating jurors who had been peremptorily challenged by the defense. Defendant maintains that race neutral reasons were given for the jurors challenged and that no pattern of discrimination was shown.
In State v. Anderson, 06-2987, pp. 41-43 (La.9/9/08), 996 So.2d 978, 1004, the Louisiana Supreme Court restated the well-settled law regarding jury selection and the appellate review of rulings on Batson challenges:
In Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ], the Supreme Court held that an equal protection violation occurs if a party 17exercises a peremptory challenge to exclude a prospective juror on the basis of a person’s race. The Supreme Court reaffirmed its position that racial discrimination by any state in jury selection offends the Equal Protection clause of the 14th Amendment in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Louisiana law codifies the Batson ruling in LSA-C.Cr.P. art. 795. See also State v. Snyder, 1998-1078 (La.9/6/06), 942 So.2d 484, rev’d on other grounds, Snyder v. Louisiana, — U.S. -, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).
If the defendant makes a prima facie showing of discriminatory strikes, the burden shifts to the state to offer racially-neutral explanations for the challenged members. If the race-neutral explanation is tendered, the trial court must decide, in step three of the Batson analysis, whether the defendant has proven purposeful discrimination. The race-neutral explanation need not be persuasive or even plausible. Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 973-974, 163 L.Ed.2d 824 (2006), quoting Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). It will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. State v. Tyler, 97-0338, at 3 (La.9/9/98), 723 So.2d 939, 942, cert. denied, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999).
The trial court’s findings with regard to a Batson challenge are entitled to great deference on appeal. Id. at 4[, 723 So.2d at 942]; see also, State v. Juniors, 03-2425, p. 28 (La.6/29/05), 915 So.2d 291, 316. When a defendant voices a Batson objection to the State’s exercise of a peremptory challenge, the finding of the absence of discriminatory intent depends upon whether the trial court finds the prosecutor’s race-neutral explanations to be credible. “Credibility can be measured by, among other factors, the prosecutor’s demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.” Miller-El, 537 U.S. at 339, 123 S.Ct. at 1040.
*321 The three-step Batson process which guides the courts’ examination of peremptory challenges for constitutional infirmities has recently been described again by the Supreme Court as follows:
A defendant’s Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a |srace-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. [Internal quotations and citations omitted.]
Collins, 546 U.S. at 338, 126 S.Ct. at 973-74.
In the instant case, other than the prospective jurors challenged for cause, the first panel included fourteen prospective jurors, three African Americans and eleven Caucasians. Additionally, seven jurors were chosen, one African American and six Caucasians. The State then moved the trial court for a reverse Batson challenge, asserting that in the last round of peremptory challenges, Defendant used seven peremptory challenges, six of which were Caucasians, while the State used none.
The State argued that no race neutral reason existed for Defendant’s exercise of his peremptory challenges to prospective jurors Jennifer Thiels, Loretta Joslin, Donna Kelly, and Cynthia Stockton. The State later withdrew the challenge as to Cynthia Stockton. It further asserted that a prima facia case had been established that Caucasians were excluded predominantly by the exercise of peremptory challenges and asked that Defendant be ordered to provide race neutral reasons for the exclusion of those jurors. Relying on La.Code Crim.P. art. 795, the trial court subsequently ruled in favor of the State and instructed Defendant to give race neutral reasons for excluding those specific jurors.
IsThe issue before this court is whether the State carried its burden of proving purposeful discrimination on the part of Defendant in excluding prospective jurors Jennifer Thiels, Loretta Joslin, and Donna Kelly. In Snyder v. Louisiana, — U.S. -, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), the Supreme Court emphasized that under the third step of the Batson inquiry, the plausibility of the prosecutor’s explanation for a peremptory strike is to be carefully scrutinized by the trial court. The trial court must evaluate the credibility of the prosecutor by assessing “not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Id. at 1208.
“In Miller-El v. Dretke, the Court made it clear that in considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted. 545 U.S. at 239, 125 *322 S.Ct. at 2317.” Snyder, 128 S.Ct. at 1208. Thus, if the record does not support Defendant’s proffered explanation, or if it shows that the proffered explanation is not plausible, an inference of discriminatory intent may be drawn. See also State v. Cheatteam, 07-272 (La.App. 5 Cir. 5/27/08), 986 So.2d 738. Accordingly, we will examine the persuasiveness of the race-neutral explanation given by Defendant for the exclusion of each of these prospective jurors as required by Batson.
Jennifer Thiels
Defendant stated that Jennifer Thiels, a Caucasian female, was excluded because her husband was related to a detective employed by the Alexandria Police Department. Defendant also asserted that Mrs. Thiels’ son had been recently arrested hnin Alexandria on drug charges. Defendant maintained that he did not feel comfortable with Mrs. Thiels serving on the jury.
In response, the State argued that Defendant had accepted other jurors who either were acquainted with or were related to law enforcement personnel or who had relatives that had been recently arrested. The State maintained that Defendant’s explanation for excluding Mrs. Thiels was not race-neutral. The trial court confirmed the accuracy of the State’s assertion and ruled that the reason was not racially neutral. Defendant objected to the trial court’s ruling.
On appeal, Defendant argues, first, that a prospective juror whose family member has been in trouble with the law and/or has a relative in law enforcement are valid race neutral reasons for a peremptory challenge and cites several cases in support of his contention.
Next, Defendant maintains that the fact that he excused one person with a particular characteristic and not another person similarly situated does not in itself show that his explanation was a mere pretext for discrimination. In support of his argument, Defendant cites State v. Elie, 05-1569 (La.7/10/06), 936 So.2d 791. In Elie, the State exercised eight peremptory challenges against African-American jurors. Following voir dire, the defense raised a Batson objection, claiming the State used its peremptory challenges to strike potential jurors based solely upon the fact they were African-American. The trial judge determined that the defendant made a pri-ma facie showing of discriminatory strikes, but denied the defendant’s Batson challenge.
On appeal, the defendant argued that the trial court erred in denying his Batson challenge. In reviewing the State’s peremptory challenges, the supreme court noted |nthe appellate court’s observation that a venire member selected for the jury had young children as did a juror that had been challenged, and stated:
Notwithstanding the appellate court’s observation, the fact jurors of different races share a similar characteristic is not dispositive when deciding whether an explanation has been pretextual. See [State v.] Collier, 553 So.2d [815 (La.1989) ] at 822 (“[T]he fact that a State excuses one person with a particular characteristic ... and not another similarly situated person does not in itself show that the State’s explanation was a mere pretext for discrimination. The accepted juror may have exhibited traits which the State could have reasonably believed would make him desirable as a juror.”) (Emphasis added). As the State argued during voir dire, Jamie Covington, a potential juror with a 13-day-old baby, was not struck because his wife was a stay-at-home mother whereas Ms. Sterling was a single mother, who had a day job, and a teenage son.
*323 Elie, 936 So.2d at 800. Ultimately, the supreme court found that a review of the State’s explanations did not reveal discriminatory intent, and thus, the State was not required to present a persuasive or even plausible explanation for excluding a juror.
Defendant herein does not dispute the State’s assertion that other jurors seated from the panel have similar characteristics to Mrs. Thiels. Additionally, this fact alone, as noted in Elie, is not dispositive in showing that Defendant’s explanation for excluding Mrs. Thiels was a pretext for discrimination. Defendant’s explanation, nonetheless, must be plausible and supported by the record. Snyder, — U.S. -, 128 S.Ct. 1203, 170 L.Ed.2d 175.
During jury selection, Mrs. Thiels testified that her son was arrested eleven years ago for possession of a small amount of marijuana. She also stated that he was convicted in 1997 for attempted unauthorized entry into an uninhabited dwelling. Mrs. Thiels denied being dissatisfied with the defense attorney in this matter and stated that she did not even recall the circumstances.
|12Mrs. Thiels maintained that her son’s convictions would not affect her ability to be fair and impartial in Defendant’s case. She also denied having an axe to grind with the police or the State, and denied the possibility that she would favor Defendant. Lastly, Mrs. Thiels confirmed with the trial court that she could erase her son’s convictions from her “chalkboard” when listening to the evidence and deliberating.
With regard to Mrs. Thiels’ relative in law enforcement, she indicated that her husband’s cousin was Detective Darrell Thiels with the Alexandria Police Department. Mrs. Thiels’ denied the possibility that her relationship with Detective Thiels would interfere with her ability to be fair and impartial in Defendant’s case. Later during voir dire, Mrs. Thiels stated that she would see Detective Thiels about once a month, but sometimes six months might go by without seeing him. Mrs. Thiels also testified that she plays cards with Detective Thiels’ wife and sees her quite often.
Although Defendant’s explanation appears to be race-neutral on its face, in light of Mrs. Thiels’ testimony during voir dire, the explanation is not plausible or supported by the record. Mrs. Thiels unequivocally stated that she could be fair and impartial in Defendant’s case despite her son’s brush with the law. Further, nothing in the record suggests otherwise. Additionally, the record reflects that Mrs. Thiels has minimal contact with her husband’s relative, Detective Thiels, and there is no suggestion that her relationship to him would affect her ability to be fair and impartial. Considering the record, in addition to the fact that other jurors seated had similar characteristics to Mrs. Thiels, Defendant’s explanation was not plausible or supported by the record. Accordingly, the trial’s court’s conclusion that Defendant’s explanation |tsfor excluding Mrs. Thiels was a pretext for discrimination will not be disturbed on appeal.
Loretta Joslin
Defendant noted that the home of prospective juror Loretta Joslin, a Caucasian female, was burglarized and that her father had been shot. Defendant also indicated that Ms. Joslin was the secretary at Philadelphia Baptist Church and stated his preference for not having church employees serve on his jury. The State pointed out that Eric Moran, who was seated on the jury, was also a burglary victim and that his father had been shot twenty-five years ago. The State maintained that Defendant did not ask Ms. Joslin any questions about her father’s shooting or about her part-time job as a volunteer secretary at the church. Additionally, the State ar *324 gued that Ms. Joslin answered every question affirmatively and confirmed her ability to be fair and impartial. The trial court ruled that Defendant did not provide a race-neutral reason to challenge Ms. Joslin and re-seated her on the panel. Defendant then objected to the trial court’s ruling.
On appeal, Defendant does not dispute the State’s assertion that another juror who was accepted has similar characteristics to Ms. Joslin. This fact alone, however, does not prove that Defendant’s explanation for excluding Ms. Joslin was a pretext for discrimination. Accordingly, Defendant’s explanation must be reviewed to determine whether it is plausible and supported by the record. Snyder, — U.S. -, 128 S.Ct. 1203, 170 L.Ed.2d 175.
During voir dire, Ms. Joslin testified that her home had been burglarized about ten years ago, but that her experience would not affect her ability to be fair and impartial in Defendant’s case. Ms. Joslin also stated that her father was shot in their |14home twenty-five years ago. Although no one was arrested for the offense, Ms. Joslin maintained that her ability to be fair and impartial would not be affected.
Ms. Joslin stated that she worked full time at Duncan’s Pest Control as a receptionist and part-time at Philadelphia Baptist Church in the nursery. However, there is no indication in the record that Ms. Joslin’s part-time job in the nursery-at Philadelphia Baptist Church would have any influence on her ability to be fair and impartial in Defendant’s case. The possibility that her part-time nursery job would influence her decision making was not explored by Defendant or the State.
Defendant’s explanation appears to be race-neutral on its face with regard to Ms. Joslin’s past experiences as a victim of crime and her part-time employment in a church nursery. However, Ms. Joslin declared that she could be fair and impartial in Defendant’s case. Additionally, there is no indication in the record of how her part-time employment in a church nursery would affect her ability to be fair and impartial. Therefore, we find that Defendant’s explanation is not plausible or supported by the record. Accordingly, the trial court’s conclusion that Defendant’s explanation for excluding Ms. Joslin was a pretext for discrimination will not be disturbed on appeal.
Donna Kelly
Defendant indicated that the cousin of prospective juror Donna Kelly was employed by either the Calcasieu Parish or Louisiana State Police Department. Again, the trial court found that the explanation was not race neutral because other jurors had relatives employed by a police department. Ms. Kelly was then re-seated on the jury. Defendant did not object to the trial court’s ruling. Pursuant to La. Code Crim.P. art. 841(A), “An irregularity or error cannot be availed of after verdict unless it was hr,objected to at the time of occurrence.” Accordingly, because Defendant failed to object to the trial court’s ruling, he did not preserve his right to appeal the ruling. See also State v. Thompson, 06-474 (La.App. 3 Cir. 11/8/06), 943 So.2d 621, writ denied, 06-2959 (La.9/14/07), 963 So.2d 993.
Barbara Kalil
By this assignment, Defendant argues that the State did not name Barbara Kalil in its reverse Batson challenge, and that any objection to Defendant’s peremptory challenge of Ms. Kalil at this point is waived.
Defendant is correct, as noted above, that the State did not provide the name of *325 Barbara Kalil at the time it raised its reverse Batson challenge. The record reflects that following the trial court’s grant of the State’s reverse Batson challenge as to Loretta Joslin, the trial court then called out Ms. Kalil’s name as the next excluded juror to be examined. The proceeding continued on without an objection at that time by either Defendant, or the State. As we have noted, “An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” La.Code Crim.P. art. 841(A). Therefore, Defendant waived his right of appellate review as to the trial court’s consideration of Ms. Kalil in response to the State’s reverse Batson’s challenge. La.Code Crim.P. art. 841(A); see also Thompson, 943 So.2d 621.

Ineffective Assistance of Counsel

By this pro se assignment of error, Defendant argues that he did not receive effective assistance of counsel. Defendant asserts that Numa Metoyer was originally appointed to represent him, but later withdrew, and that Darrell Hickman was then appointed. According to Defendant, Mr. Hickman never received his file from Mr. | ifiMetoyer. Further, Defendant states that Mr. Hickman admitted to him that he was not prepared for trial, was not aware of the trial date, and subsequently asked the trial court for a continuance, but that it was denied.
As observed by this court in State v. Lee, 08-456, pp. 8-9 (La.App. 3 Cir. 11/5/08), 996 So.2d 1217, 1223:
Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy.
In support of his claim in the instant case, Defendant attached a letter written to him from defense counsel, Mr. Hickman, which substantiates Defendant’s claim. This letter, however, is not part of the record and cannot be considered on appeal as evidence to support his claim. Additionally, the record lacks information needed to substantiate Defendant’s claim. More specifically, the record does not contain a written motion to continue trial or a transcript of a hearing on a motion to continue trial, nor does the trial transcript indicate that such a motion was raised prior to the beginning of trial. Accordingly, Defendant’s ineffective assistance claim cannot be resolved on appeal and must be relegated to post-conviction relief.

Justification for Stop

Defendant couches this pro se argument in terms of the insufficiency of the evidence to sustain his conviction. However, the contention in his brief is that the Alexandria Police officers did not have particular justification for an investigatory stop. Defendant acknowledges that defense counsel did not file a motion to suppress and that the issue as to whether officers had the right to chase and arrest him was not | ,7addressed at trial. Therefore, Defendant contends that he received an unfair trial. Because this issue was not raised prior to or during trial and is being raised for the first time on appeal, the issue is not properly before this court. La.Code Crim.P. arts. 703(F) and 841(A); see also State v. Boyance, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, writ denied, 06-1285 (La.11/22/06), 942 So.2d 553.

Jury Charge

By this assignment of error, Defendant argues that a jury charge was *326 unfair and unconstitutional. In his brief, Defendant addresses the assigned error in a single paragraph as follows:
The State based its entire case upon the fact that the Defendant ran when he saw the police. No opportunity to determine the legality of the infringement of his rights or seizure, yet the jury was instructed to disregard that question as if a Judge has determine this Fact of Law. [sic].
The record reflects that the jury was instructed on this issue as follows:
Whether the police had the right to stop the defendant, chase the defendant, arrest the defendant, is a question of law and not a question of fact. I decide questions of law. You decide questions of fact. Therefore, you, the jury, should not concern itself or deliberate on the question about whether or not the law enforcement officers had the right to stop the defendant when he was arrested on March 20th of 2007....
There is no indication that Defendant objected to this jury charge at the trial court level. Therefore, the matter is not properly before this court at this time. La.Code Crim.P. arts. 801(C) and 841(A). See also State v. Schneider, 07-943 (La.App. 3 Cir. 4/2/08), 981 So.2d 107, writ denied, 08-942 (La.12/12/08), 997 So.2d 558. Accordingly, this issue lacks merit.
| ^CONCLUSION
For the foregoing reasons, Defendant’s conviction is affirmed.
AFFIRMED.