NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-774

STATE OF LOUISIANA
VERSUS
ERIC DARELL COSEY
AKA HENRY CARTER
AKA KENDRICK CARTER

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 297,595
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Billy Howard Ezell, and James T. Genovese, Judges.

FOURTH FELONY OFFENDER CONVICTION AND SENTENCE
VACATED AND SET ASIDE AND THIRD FELONY OFFENDER
CONVICTION AND SENTENCE REINSTATED.

James C. Downs
District Attorney - 9th JDC
701 Murray Street
Alexandria, LA 71301
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

**G. Paul Marx**
**Attorney at Law**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 237-2537**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Eric Darell Cosey**

**Beth Smith Fontenot**
**Louisiana Appellate Project**
**P. O. Box 3183**
**Lake Charles, LA 70602-3183**
**(337) 491-3864**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Eric Darell Cosey**

**Brian Davis Mosley**
**Assistant District Attorney**
**P. O. Box 12127**
**Alexandria, LA 71315**
**(318) 484-6100**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Eric Darell Cosey**
**Richwood Correctional Center**
**180 Pine Bayou Circle**
**Monroe, LA 71202**
          **Pro Se**

**Ezell, Judge.**

On September 18, 2009, the Defendant, Eric Darrell Cosey, a/k/a Henry Carter, a/k/a Kendrick Carter, was charged by bill of information, in count one with possession of cocaine, a violation of La.R.S. 40:967(C), and in count two with obstruction of justice, a violation of La.R.S. 14:130.1. Following a jury trial, the Defendant was found guilty as charged on March 17, 2010. The Defendant was sentenced on March 24, 2010, to serve five years at hard labor for each offense with the sentences to run consecutively. The trial court also recommended that he serve the last year of his sentence in a substance abuse program.

Following sentencing, the State charged the Defendant as a fourth felony offender. On May 3, 2010, the Defendant pled guilty to being a third felony offender in exchange for his agreement not to seek an appeal, post-conviction relief, or request any documents in anticipation of seeking same. In breach of the agreement, the State would proceed with the fourth felony offender charge. The Defendant's sentences were then vacated, and he was sentenced to ten years at hard labor for each offense, to run concurrently with each other. The Defendant subsequently withdrew his prior motion for an appeal.

On January 10, 2011, the Defendant filed a motion for an out-of-time appeal which was granted that same day. The State motioned the trial court to refix the hearing on the Defendant's habitual offender bill charging him as a fourth felony offender. At a hearing held on February 28, 2011, the trial court found the Defendant had violated his plea agreement and concluded he was a fourth felony offender. The Defendant was then sentenced to serve twenty years at hard labor for each offense, to be served without benefit of probation, parole, or suspension of sentence.[1] The Defendant did not file a motion to reconsider his sentences.

---

[1] The trial court did not state whether the sentences were to run concurrently or consecutively.

The Defendant is now before this court on appeal, arguing that his convictions violate double jeopardy and that the trial court erred in finding he had violated his plea agreement. We vacate and set aside the Defendant's adjudication as a fourth felony offender and sentence and reinstate his adjudication as a third felony offender and sentence.

## FACTS

On December 18, 2009, officers observed a vehicle hesitate as it approached a DWI checkpoint. When the vehicle reached the checkpoint, the Defendant, a passenger in the vehicle, was seen holding a baggie suspected to contain cocaine. When instructed to open his hand, the Defendant refused and then put a substance he was holding in his hand into his mouth. The Defendant refused to spit out the substance. The Defendant was taken into custody, but the substance was not recovered. A white powdery substance was observed on his mouth. Officers subsequently searched the vehicle, and crack cocaine was recovered.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there are several errors patent raised and addressed in Assignment of Error Number Three.

## ASSIGNMENT OF ERROR NUMBER ONE

By this assignment of error, the Defendant argues that his convictions for possession of cocaine and obstruction of justice violate double jeopardy. The Defendant asserts that the State relied on the same evidence to convict him of both offenses.

When reviewing a claim of double jeopardy, two tests are used in Louisiana courts to determine whether double jeopardy exists—the *Blockburger* test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932) and the "same evidence test." *State v. Archield*, 09-1116, p. 4 (La.App. 3 Cir. 4/7/10), 34 So.3d

434, *writ denied*, 10-1146 (La. 5/20/11), 63 So.3d 972.  The Defendant concedes on appeal that the *Blockburger* test is not applicable to his case; thus, the instant case is analyzed herein using only the same evidence test.

The supreme court explained in *State v. Steele*, 387 So.2d 1175, 1177 (La.1980) (citation omitted):

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.  The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.

*See also State v. Cotton*, 00-850, (La. 1/29/01), 778 So.2d 569, *rehearing granted in part on other grounds*, 00-850 (La. 4/20/01), 787 So.2d 278.

The Defendant was convicted of possession of cocaine, a violation of La.R.S. 40:497.  Accordingly, the State had to show that the Defendant knowing and intentionally possessed cocaine.  "Possession of narcotic drugs can be established by actual physical possession or by constructive possession. *State v. Trahan*, 425 So.2d 1222, 1226 (La.1983)."  *State v. Major*, 03-3522, p. 7 (La. 12/1/04), 888 So.2d 798, 802.  The supreme court in *State v. Toups*, 01-1875, pp. 3-4 (La. 10/15/02), 833 So.2d 910, 913, summarized the law on constructive possession as follows:

> A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control.  Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it. . . . Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug. . . .

> *State v. Trahan*, 425 So.2d 1222 (La.1983) (citing *State v. Smith*, 257 La. 1109, 245 So.2d 327, 329 (1971)).  However, it is well settled that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession.  *State v. Harris*, 94-0970 (La.12/8/94), 647 So.2d 337; *State v. Bell*, 566 So.2d 959 (La.1990).

A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. *State v. Hughes*, 587 So.2d 31, 43 (La.App. 2 Cir.1991), *writ denied*, 590 So.2d 1197 (La.1992); *see also Bujol v. Cain*, 713 F.2d 112 (5 Cir.1983), *cert. denied*, 464 U.S. 1049, 104 S.Ct. 726, 79 L.Ed.2d 187 (1984) (listing above factors as well as a sixth factor: "evidence that the area was frequented by drug users").

*See also State v. Jacobs*, 08-1068, (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931.

The Defendant was also charged with obstruction of justice as provided in La.R.S. 14:130.1(A)(1), which reads:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or

(b) At the location of storage, transfer, or place of review of any such evidence.

At trial, several officers with the Pineville Police Department testified about their involvement with the instant offense that occurred around 1:00 a.m. on June 20, 2009. Officer Timothy Robinson testified that a car approaching the checkpoint caught his attention when it stopped at the foot of a nearby bridge. With his flashlight, Officer Robinson motioned the vehicle to come forward. The vehicle moved forward and stopped again, and then once more, it moved forward

4

and stopped. According to Officer Robinson, there was nothing impeding the vehicle from approaching the checkpoint. Officer Robinson motioned the vehicle to come forward again, and Officer Vincent Petito was eventually able to make contact with the driver of the vehicle. Officer Robinson then made his way to the passenger side of the vehicle where Officer Cody Griffith was making contact with the passenger, the Defendant herein.

Officer Robinson illuminated the inside of the car with his flashlight and observed a baggie in the Defendant's hand. He asked the Defendant numerous times to open his hand, but the Defendant refused and clenched his hand shut. Officer Robinson observed the Defendant put a substance from his hand into his mouth, chew it, and swallow it. Officer Robinson suspected the substance was crack cocaine. The officers on the scene attempted to recover the substance from the Defendant's mouth and extracted him from the vehicle. Nothing was recovered from the Defendant's mouth. After he was subdued, Officer Robinson did, however, observe a white powder substance on the Defendant's mouth. Lastly, Officer Robinson testified that he assisted with logging the evidence recovered from the scene, and he identified crack pipes found in the vehicle.

Similarly, Officer Griffith explained that during a field sobriety checkpoint, a passenger in a blue vehicle, the Defendant herein, appeared very nervous and was holding a clear baggie in his hand. Officer Griffith described the baggie as a "torn corner," a manner in which narcotics are known to be stored. Officer Griffith notified the other officers that there was something in the Defendant's hand, and he instructed the Defendant to open his hand. As Officer Griffith proceeded to the passenger side of the car, he saw the Defendant's left hand come up to his mouth as if he was trying to swallow something. Officer Griffith instructed the Defendant to open his mouth and spit it out. The Defendant refused, keeping his jaw clenched. The Defendant was physically removed from the car by Officer Griffith,

5

and he resisted the officers as they tried to handcuff him. Officer Griffith continued to instruct the Defendant to open his mouth and spit out the substance.

After he was cuffed, the Defendant settled down and began to talk and holler at the officers. Officer Griffith observed a white residue on the Defendant's lips which, in his experience, indicated that the Defendant may have swallowed crack cocaine. Officer Griffith did not see the white residue prior to the moment the Defendant put his hand to his mouth. On cross examination, however, Officer Griffith stated he was focused on the Defendant's hands at that time, not his lips.

Officer Petito testified that while working a field sobriety checkpoint, he saw a blue Buick Century approach the checkpoint. He made contact with the driver and began asking routine questions when he overheard other officers yelling at the Defendant to "spit it out." It appeared to Officer Petito that the Defendant had placed something into his mouth which left a white residue all over his mouth.

Sergeant Danny Paul testified he searched the vehicle after the Defendant, and the driver were arrested. Sergeant Paul went to the driver's side of the vehicle and found what he believed to be crack cocaine on the floorboard. After pointing it out to the arresting officers, they continued to search the vehicle and recovered two metal crack pipes from under the seat on the driver's side. Sergeant Paul also observed a white residue on the Defendant's lips.

Officer Wes Chandler testified he heard a loud commotion after a vehicle was stopped at a field sobriety checkpoint. He walked to the vehicle to see what was going on. Officer Chandler assisted in handcuffing the Defendant and searching the vehicle. He collected all the evidence, including cocaine found on the driver's side of the vehicle and crack pipes found beneath the driver's seat.

Rachal Plaisauce, a forensic chemist with the North Louisiana Crime Lab, testified that the evidence submitted in the instant investigation was determined to contain cocaine.

6

On appeal, the Defendant contends that the evidence showing he had a substance in his hand, then put the substance in his mouth and swallowed it, was used at trial to convict him of both possession of cocaine and obstruction of justice. Additionally, the Defendant maintains that double jeopardy prohibits a finding that he exercised dominion and control over the cocaine found on the floorboard, because such a finding is based on his actions in trying to conceal the substance in his hand.

There is no evidence in the record to show the Defendant was in actual physical possession of cocaine. The police did not recover the substance from his mouth or body, nor did the police test the white residue remaining on the Defendant's mouth after he swallowed the substance. The only evidence of cocaine possession, constructive possession, was the cocaine found on the floorboard of the driver's side of the vehicle. Accordingly, the evidence that he had a substance in his hand before putting it in his mouth and swallowing it showed he was guilty of obstruction of justice only, not actual physical possession of cocaine.

The Defendant also argues that the only evidence upon which the jury relied to infer guilty knowledge to convict him of constructive possession of the cocaine was his actions involving the substance observed in his hand. In support of his argument, the Defendant refers to *State v. Jacobs*, 6 So.3d at 319, wherein this court noted, "The supreme court in *State v. Davies*, 350 So.2d 586 (La.1977), established that evidence of flight, concealment, and attempt to avoid apprehension is indicative of consciousness of guilt and may be considered by a jury to infer guilt. *See also State v. Richards*, 06-1553 (La.App. 3 Cir. 5/2/07), 956 So.2d 160, *writ denied*, 07-1129 (La.12/14/07), 970 So.2d 529."

Although the evidence showing the Defendant swallowed a substance he was holding in his hand might be considered as evidence of concealment, this court

7

notes that the State presented other evidence for the jury to consider in determining guilty knowledge and ultimately, constructive possession. The record reflects that the Defendant refused to reveal what he was holding in hand, clenching his fist tight. The record also shows that as a passenger in the vehicle, the Defendant had his access to the area where the cocaine was found. Lastly, he was in close physical proximity to the cocaine. Accordingly, there is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

By this assignment of error, the Defendant argues that the trial court erred in finding he violated his plea agreement by filing a motion for an out-of-time appeal. The Defendant maintains he was not advised that he was waiving any appeal rights until after he had already entered his guilty plea. The Defendant also contends there is no written plea agreement in the record—he simply pled guilty to being a third felony offender without any agreed upon sentence.

In support of his argument, the Defendant refers to *State v. Pickens*, 98-1443, pp. 7-8 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, 701, *writ denied*, 99-1577 (La. 11/5/99), 751 So.2d 232 *and writ denied*, 01-2178 (La. 4/19/02), 813 So.2d 1081, wherein this court stated:

> A defendant may waive his right to appeal, either expressly or impliedly, but that waiver must be knowing and voluntary. An implied waiver occurs when a defendant is told of his right to appeal by a trial court, but he chooses not to take the appeal within the time limits prescribed by law. It is express if a defendant is told that he has the right to appeal and he says in court, "I waive my right to appeal."

> In addition, when a defendant pleads guilty pursuant to a plea bargain, jurisprudence traditionally holds that he is waiving only the right to appeal *his conviction*. *State v. Wilburn*, 591 So.2d 1255, 1256 (La.App. 3 Cir. 12/18/91), *writ denied*, 613 So.2d 970 (La.1993); *State v. Lawson*, 95-1604, p. 3 (La.App. 1 Cir. 12/20/96); 684 So.2d 1150, *writ denied*, 97-191(La.6/13/97); 695 So.2d 986.

After sentencing and the denial of his oral motion to reconsider sentence, the Defendant orally moved for an appeal which was granted. The State then filed a habitual offender bill, charging the Defendant as a fourth felony offender.

At the habitual offender hearing, the Defendant was fingerprinted in open court for a comparison to prior fingerprints. Following a discussion held off the record, the trial court confirmed with the Defendant that he wished to enter a guilty plea to being a third felony, and the following colloquy took place:

THE COURT :

> All right, you understand, uh, that by coming to Court and pleading guilty that you, (1) you're not required to plead guilty. You understand that?

THE DEFENDANT :

> Yes, sir.

THE COURT :

> Uh, you have a right to have an attorney appointed. You have a right to plead not guilty[,] and we can proceed to a trial. It would be a trial by judge alone at your choice. I mean, it would be a trial by judge alone[,] and the State would have the burden of proving beyond a reasonable doubt that you were the same person that was previously convicted of two prior felony convictions within the last ten years. Do you understand that?

THE DEFENDANT :

> Yes, sir.
>
> . . . .

THE COURT :

> . . . .
>
> You understand at trial you would be entitled to the assistance of an attorney. You would be entitled to confront and cross-examine any witnesses who testified against you. You would be entitled to subpoena witnesses to testify on your behalf, and you would also have a right not to be compelled to incriminate yourself. Do you understand this sentence?

THE DEFENDANT :

9

Yes, sir.

THE COURT :

And knowing all those things that you'd have a right to a trial, the State would have the burden of proving all those things, you wish to enter a plea of guilty to being a Third felony offender. Is that correct?

THE DEFENDANT :

Yes, sir.

THE COURT :

Mr. Lampert, what is the Third felony that he's convicted -- that's he pleading guilty to.

MR. KUTCH :

The possession.

MR. LAMPERT :

Found guilty as charged to the offense of possession CDS Schedule II, and obstruction of justice. I think I've only sought to enhance…

THE COURT :

Okay, he was previously sentenced to five years on both of those, I believe.

MR. KUTCH :

That is correct, your Honor, consecutive.

THE COURT :

Five and five consecutive. All right, uh, -- sir, on the possession of CDS II, if you're a third felony offender the sentence would be not less than two-thirds the longest term, no more twice – no more than twice the longest term. So that would be forty months to ten years is what the possibility could be on that charge. You understand?

THE DEFENDANT :

Yes, sir.

THE COURT :

10

Obstruction of justice. The obstruction of justice is the same thing. It's not more than five years with or without hard labor. So the minimum on that would be forty months, the maximum would be ten years. Do you understand that?

THE DEFENDANT :

Yes, sir.

THE COURT :

All right, do you have any questions today concerning your agreement that you're a third felony offender, sir?

THE DEFENDANT :

Yes, sir. I asked, I asked them did I, did I get – can I get all credit for time served. I've been incarcerated for a year already.

THE COURT :

If you have been incarcerated a year on this charge…

THE DEFENDANT :

Yes, sir.

THE COURT :

…you're entitled to credit.

. . . .

Whatever pretrial time you're entitled to then you'll be -- you'll receive that as part of your sentence. Do you understand that?

THE DEFENDANT :

(no response)

THE COURT :

Whatever pretrial. I don't know how much. I'm not going to say it's from June such and such.

THE DEFENDANT :

That's, that's why I'm trying to, that's why I'm trying to get, uh, get everything understood right here, Judge Yeager, so I can understand.

THE COURT :

Well, we're going to understand. You're entitled to all the time that you have served on this charge.

THE DEFENDANT :

All right.

. . . .

THE COURT :

All right. All right, Mr. Lampert, I believe that the -- I've advised the defendant of his rights related to a trial as a [h]abitual [o]ffender and I'm satisfied that he understands his rights, that he knowingly and intelligently has waived these rights. I believe that his plea of guilty is free and voluntary and not the result of any force, threats, or promises, and I will accept his plea of guilty at this time.

After the Defendant was sentenced, the trial court asked the State if there was anything else that they needed to do with regard to the Defendant. The State responded:

MR. LAMPERT :

No, I want him to understand plainly that in the event he files anything, a letter wanting his transcript, anything that -- I'm going to meet that with a fourth felony offender Bill. I'm not going to offer this deal again. I'm going to put Mr. Delcomyn on, we're going to prove up our priors, and I'm going to ask you to find him guilty of the fourth, which will be a twenty. So, this deal is that he files nothing with us.

THE COURT :

Mr. Cosey, you understand that you made an agreement with the State, and part of that agreement is you're not to file an appeal, you're not to file post conviction relief, you're not to ask for a transcript or anything. This matter is over with today. You understand?

THE DEFENDANT :

Yeah. . . .

THE DEFENDANT :

No, I don't want to file nothing else. It's over.

THE COURT :

All right.

12

THE DEFENDANT :

I ain't got no win with y'all.

THE COURT :

All right.  See the Sheriff then …

MR. KUTCH :

Your Honor, based on that I had previously made a oral motion on appeal.  I'm going to withdraw that.  This matter is concluded.

The Defendant correctly asserts there is no written plea agreement in the record.  Additionally, the trial court did not distinguish whether the Defendant was waiving his right to appeal his habitual offender adjudication as a third felony offender, his sentences, or both.  Without a written plea agreement expressly stating the terms of the plea agreement and the fact that his plea agreement did not contain a sentencing agreement, we find that the Defendant did not knowingly or voluntarily waive his right to appeal his sentences.  Accordingly, we find the trial court erred in finding that the Defendant violated his plea agreement; thus, his adjudication as a fourth felony offender and subsequent sentences are vacated and set aside, and his adjudication as a third felony offender and sentences is reinstated.

## ASSIGNMENT OF ERROR NUMBER THREE

By this assignment of error, the Defendant argues that if this court allows his adjudication as a fourth felony offender to stand, then certain errors patent exist with regard to his sentencing as a fourth felony offender.  This assignment is addressed within the court's opinion.

## *PRO SE* ASSIGNMENT OF ERROR NUMBER ONE

By this assignment of error, the Defendant argues "that the State failed to prove beyond a reasonable doubt that he was in possession of CDS II and, obstruction of justice."  The Defendant "contends that the evidence 'obtained'

13

under the drivers [sic] side seat of the vehicle in which [sic] was not his and he was not in immediate or constructed [sic] possession of the contraband found."

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

In assignment of error number one, we addressed the elements of possession of CDS, schedule II, and obstruction of justice, and the evidence presented by the State to prove both offenses. The record contained evidence to satisfy the elements for both offenses, including constructive possession. Accordingly, there is no merit to this assignment of error.

### *PRO SE* ASSIGNMENT OF ERROR NUMBER TWO

By this assignment of error, the Defendant argues that the search and seizure was constitutionally illegal. The Defendant maintains that the testimony of officers indicates they observed the hands of the Defendant and the driver when they approached the vehicle. As such, the Defendant contends that the officers' lives were not in danger. The Defendant also asserts that the driver did not consent to the search of his vehicle.

In support of his argument, the Defendant refers to *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880 (1968), wherein the United States Supreme Court first

recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." This court in *State v. Kinchen*, 11-9, p. 9 (La.App. 3 Cir. 6/8/11), 71 So.3d 344, 350-51, stated:

> The Fourth Amendment to the U.S. Constitution guarantees Defendant's right to be secure in his person and property against unreasonable searches. However, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). "The totality of the circumstances, 'the whole picture,' must be considered in determining whether reasonable cause exists." *State v. Belton*, 441 So.2d 1195, 1198 (La.1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984) (*citing United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

> A form of seizure which does not require a warrant or probable cause is an investigatory stop made pursuant to La.Code of Crim.P. art. 215.1(A). *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The right to make an investigatory stop and question the individual detained must be based upon reasonable cause or reasonable suspicion to believe that the person has been, is, or is about to be engaged in criminal conduct. La.Code Crim.P. art. 215.1(A) and *State v. Belton*, 441 So.2d 1195 (La.1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. *Belton*, 441 So.2d 1195, and *State v. Hall*, 581 So.2d 337 (La.App. 3 Cir.1991).

> A generalized suspicion or "hunch" that an individual is involved in criminal conduct is not sufficient to detain the individual or his automobile. A police officer must have a particularized suspicion based upon articulable facts. *See State v. Thibodeaux*, 531 So.2d 284 (La.App. 3 Cir.1987); *State v. Thompson*, 543 So.2d 1077 (La.App. 2 Cir.), *writ denied*, 551 So.2d 1335 (La.1989); and *State v. Bunnell*, 517 So.2d 439 (La.App. 1 Cir.1987). If the police officer has a specific suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. *U.S. v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

15

*State v. Livings*, 95-251, p. 4 (La.App. 3 Cir. 11/15/95), 664 So.2d 729, 732-33, *writ denied*, 95-2906 (La.2/28/96), 668 So.2d 367.

In the instant case, that the suspicious activity of the vehicle before the stop, coupled with the Defendant's behavior after the stop, supplied reasonable cause or reasonable suspicion to believe the Defendant had been, was, or was about to be engaging in criminal conduct. The vehicle in which the Defendant was a passenger approached a field sobriety checkpoint in a manner which caught Officer Robinson's attention and raised his suspicion. When the vehicle reached the checkpoint, Officers Robinson and Griffith noted that the Defendant appeared very nervous, and they observed a baggie in his hand. Officer Griffith described the bag as a "torn corner," a common manner in which narcotics are stored. When instructed to open his hand, the Defendant refused to comply and eventually consumed a substance from his hand, leaving a white residue on his lips. Accordingly, this assignment of error is without merit.

### *PRO SE* ASSIGNMENT OF ERROR NUMBER THREE

By this assignment of error, the Defendant argues the State failed to "enter other prior guilty pleas to the record" at the habitual offender hearing as required by La.R.S. 15:529.1. The Defendant maintains that the State's failure to do so "resulted in petitioner['s] habitual offender sentence as a fourth offender [being] 'illegal' under due process of law[.]"

This court finds that the Defendant's adjudication as a fourth felony offender and subsequent sentences should be vacated and set aside; thus, this assignment of error is now moot.

### DECREE

The Defendant's adjudication as a fourth felony habitual offender conviction and subsequent sentence is vacated and set aside. The court reinstates the third felony habitual offender conviction and sentence.

16

**FOURTH FELONY OFFENDER CONVICTION AND SENTENCE VACATED AND SET ASIDE AND THIRD FELONY OFFENDER CONVICTION AND SENTENCE REINSTATED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules-Courts of Appeal. Rule 2-16.3.